ALTHORF, Administrator, *et al.*, v. WOLFE.

One who directs his servant to remove snow and ice from the roof of his house is responsible for an injury received by a passenger in the street from such snow and ice, whether the negligence was that of the servant or of a stranger whom he employed, or who volunteered, to assist him.

The owner or possessor of fixed property is, in general, responsible that it be so used as that others receive no injury; and where such injury happens from the negligence of a person about the premises, it lies upon the owner to absolve himself under some exception, as that the offender was there despite of due care to exclude negligent persons: by superior force; or in the employment of a third person having temporary control.

Where the passenger is killed, the fact that his widow received an amount insured upon his life is not to be taken in reduction of the damages recoverable, under the statute, for her benefit.

APPEAL from the Common Pleas of the city of New York. The complaint stated that, on 29th January, 1856, the defendant occupied and resided in a house at the northwest corner of Fifth avenue and Twenty-sixth street, in the city of New York; that, on that day, William H. Warner, the plaintiffs' intestate, was lawfully passing through the public street in front of the defendant's house, when a servant of the defendant was, by the defendant's orders, clearing off snow and ice from the roof of said house; that said servant did carelessly, negligently and improperly, in the course of his employment of removing and clearing off said snow and ice, cast and throw snow and ice into the public street from off the roof of the

house, and in so doing, with great force and violence struck Warner upon the head, neck, shoulders and body, with snow and ice; by reason whereof said Warner sustained very severe wounds and injuries, resulting in his almost instantaneous death. The answer admitted that, on the morning of the day the death occurred, the defendant directed one Michael Fagan, his coachman, to clear off the snow from the roof of the house, and averred that he was not present when the snow was cleared off, having left to attend to his business in the lower part of the city, after giving such direction.

On the trial, it was proved that, on the 29th January, 1856, William H. Warner was passing through Twenty-sixth street, on the sidewalk, from Broadway to Fifth avenue. As he passed the defendant's house, he was struck upon the head with snow and ice thrown from the roof of the house, producing a fracture of the skull and injuries to the brain, which caused his death in a short time. The snow and ice was being cleared from the roof of defendant's house, and thrown into Twenty-sixth street. Two persons had just passed, when a quantity of snow and ice was thrown on the head of Warner, who was directly behind them. There was a coping upon the roof, which prevented the men engaged in clearing the roof from being seen, even from the opposite sidewalk. When Warner was struck, Michael Fagan, the coachman of the defendant, who was engaged in the work, hearing the alarm, looked over the coping, and, seeing that Warner was injured, stopped the work and came down. Warner was taken to a drug store, and died very soon afterwards. Warner was a piano-forte maker, an industrious and estimable citizen, and left surviving a widow, and child about eight years old.

This was the case, as presented by the plaintiffs. Upon resting, a nonsuit was asked, on the ground that there was not sufficient evidence to go to the jury on the question of negligence on the part of the defendant; which was denied, and an exception taken.

The defendant then called Michael Fagan, who testified, substantially, that the defendant, about nine o'clock on the

Althorf *v.* Wolfe.

morning of the day of the accident, directed him to take the snow off the roof, as the roof leaked. He did not go at the work immediately, as Mrs. Wolfe sent him for the doctor. On return- ing, he stopped for one Patrick Cashan, and asked him to come and help him. They went upon the roof, and, after looking out, commenced shoveling. Fagan used a wooden, and Cashan an iron shovel. He says he shoveled no ice, and saw none. They did not shovel very fast, and he could not tell who threw the last shovelful of snow before the man got hurt. He heard a noise in the street, and looked over the coping, and, turning to Cashan, told him to stop. He saw that somebody was hurt, and went down. He saw no ice on the roof or on the side- walk. The defendant gave no particular instructions as to how he should take the snow off the roof. Cashan was assisting him at his suggestion, and without any authority from the defendant to employ any one.

Patrick Cashan was then called, and testified that he was employed by no one. Fagan, who was a friend of his, asked him to help him, and, as he had nothing to do, he went, to oblige him. They were working on the roof beside each other, and about four feet apart. He saw a little ice on the roof near the trimming, but " he knew that he threw it into the middle of the street, unless a bit may have fallen on the sidewalk." When Fagan looked over the wall, he stopped him.

The court excluded an offer to show, by the former coach- man of the defendant, that in 1854, when he was directed to clear the same roof from snow, he did it by throwing the whole of it into the yard of the premises, being the yard attached to the defendant's house.

It was admitted that, at the time of the injury to Warner, his life was insured for $2,500 in the Connecticut Mutual Life Insurance Company, for the benefit of his wife, and that, after his death, she received from the company $2,400, as the pro- ceeds of the policy.

The court charged, among other things, that, it being con- ceded that the snow was removed from the roof by the direc-

tion of the defendant, and it appearing that the direction was general, without any specific instructions as to manner, the servant had the right to do it in the ordinary way, and to employ assistance, if that were necessary. If, therefore, in the performance of this general direction, an injury to any one, or death, as in this case, resulted, the defendant is liable, to the extent. of the injury produced, provided such injury be the result of negligence.

The defendant's counsel requested the court to charge the following propositions:

1. That, if the jury should find for the plaintiffs, then, in assessing the damages, they should take into consideration the money received by the widow on the policy of life insurance.

2. That, if the jury should find that the witness Cashan was employed by Fagan without authority from the defendant, and that the injury to Warner resulted from the acts of Cashan, and not of Fagan, the defendant was not liable for the acts of Cashan, and the plaintiffs were not entitled to recover.

3. There was not sufficient evidence to justify the jury in finding that Cashan was the agent or servant of 'the defendant; and the defendant was not liable for his acts.

4. That the burden of proof was on the plaintiffs, to show that the injury resulted from the acts of the defendant, or his servant; and if the jury were in doubt as to whether the injury resulted from the act of Cashan or Fagan, the defendant was entitled to the benefit of that doubt.

5. That the defendant was not liable in this action for the negligent act of his servant, unless the-defendant was privy to that negligence, and directed or knowingly assented to the particular mode adopted by his servant of removing the snow from the roof.

The Case states that the court refused to charge said propositions, or either of them, further than they were embraced in the charge as given; and to such refusal the defendant's counsel excepted. The plaintiffs had a verdict for $3,500; and the

Althorf *v.* Wolfe.

judgment entered thereon having been affirmed at general term, the defendant appealed to this court.

*John H. Reynolds*, for the appellant.

*James T. Brady*, for the respondents.

WRIGHT, J. The plaintiffs' intestate was lawfully passing through a public street in the city of New York, when he was struck on the head by a quantity of snow and ice thrown from the roof of the defendant's house, and killed. It was negligence, in the highest degree, to throw snow and ice from the roof of a building into a thoroughfare of a crowded city, without using some precaution against accidents. Instead of depositing the snow incumbering the roof in the yard attached to the premises of the defendant, it was cast into the street, without any warning of danger being given to passers-by. The defendant, in his answer, admits that, on the morning of the day the accident happened (having been apprised that the roof was leaking in consequence of a large quantity of snow having accumulated thereon), he directed his servant Fagan to remove the snow from the roof. No specific instructions were given in respect to the manner of doing the work. It was a general direction to clear the roof, as the defendant was leaving his house to attend to his business in the lower part of the city. The defendant was not present, nor did he superintend the work when it was done, but entrusted it solely to his servant, without a suggestion as to how it should be performed, or where the snow and ice should be deposited. It cannot be questioned that, under these circumstances, the defendant is liable for any injury resulting from the negligence of Fagan in performing the work entrusted to him; and it must be conceded that, if the identical body of snow and ice that descended upon the head of the deceased, and caused his death, was actually thrown by Fagan, though another person may have been aiding him in the work of clearing the roof, the defendant would be responsible. But it seems that one Patrick Cashan had

volunteered to assist Fagan in removing the snow. For that purpose he had been admitted into the defendant's house, by the defendant's servant. He was aiding Fagan, undoubtedly without the knowledge or express authority of the defendant himself; but it is not to be assumed that he went upon the roof without the assent of the person or persons having charge or control of the defendant's house at the time. The evidence showed that Fagan and Cashan together were engaged in shoveling the snow from the roof when the accident occurred; but, whether the identical body of snow and ice that caused the death of Warner was thrown by Fagan or Cashan, was left in uncertainty. The fatal injury was evidently produced by ice being thrown on the head of the deceased. Fagan testified that he neither saw nor shoveled any ice; while Cashan testified that he saw a little ice on the roof near the trimming, but he knew that he threw it into the middle of the street. The injury occurred on the sidewalk in front of the defendant's house. The request, however, was, to submit to the jury to find whether the injury to Warner resulted from the act of Cashan or Fagan; and if from the act of Cashan, and they further found that he was employed by Fagan without the authority of the defendant, to instruct them that the defendant was not liable. In other words, as there was no pretence of any express authority from the defendant to employ Cashan to assist in the work, to instruct the jury that, if they should find that Cashan, and not Fagan, threw the identical shovelful of snow and ice that struck Warner, occasioning the fatal result, there could be no recovery. Whether it was an error of law to refuse so to charge, was the only question argued at bar, or of any difficulty in the case.

I am of the opinion that, under the conceded facts of the case, it was not error to refuse to charge as requested, and that it was immaterial, as affecting the defendant's liability, whether Fagan or Cashan actually threw that parcel of the snow and ice being removed from the roof which occasioned the fatal injury. In either view, it was, substantially, the act of Fagan, who had been charged by the defendant with the duty of clear-

Althorf *v.* Wolfe

ing the roof. The defendant had given him general directions
to throw the snow from the roof of his house, enjoining no
caution and suggesting no mode of doing it, to prevent injury;
nor placing the servant under any restriction against procuring
aid in the work. I see not, therefore, why he was not entitled
to procure aid, and invested with the power of exercising his
own judgment as to the mode of doing the work. He selected
Cashan to assist him, and introduced him into the defendant's
house for that purpose, without objection from those having
the charge and control of it. Provided with the defendant's
tools, they engage together in the work, and in its progress
one of them throws the deadly missile. Is this not substan-
tially the act of Fagan? Fagan was present, aiding, directing
and controlling Cashan, as much as he directed and controlled
the shovel in his own hands. Nobody will doubt that, if he
had thrown it with his own hands, the defendant would have
been responsible. It can scarcely be less a negligent act of
Fagan that it was thrown by a person whom he had requested
to assist him in the employment in which they were mutually
engaged, and who had been admitted upon the roof of the
defendant's house without objection. In *Booth* v. *Mister* (7
Carr. & Payne, 66), the defendant was held liable for injuries
to the plaintiff's cabriolet, resulting from the negligent manner
in which the defendant's cart was driven, although it appeared
that the defendant's servant was not driving at the time, but
had entrusted the reins to a stranger who was riding with the
servant, and not in the service of the defendant. The defend-
ant's liability in that case was placed on the ground that the
negligence causing the injury was substantially the act of the
defendant's servant, who was in the cart, and the master had
put it in the power of the servant to do the injury. It is very
clear, in the present case, that the defendant put it in the power
of Fagan to do the injury, and that, if he had not directed the
latter to remove the snow from the roof, it could not have
occurred. Nor could there have been any pretext for attri-
buting the fatal result to the negligent act of Cashan, if the
defendant's servant and household had not only voluntarily

admitted him into the house, but solicited his assistance and services. Had Cashan gone upon the roof of the defendant's house without the knowledge or authority of the defendant or his family, and injured a passer-by, by throwing snow and ice upon him, nobody would pretend that the defendant would be liable; but the case assumes an entirely different aspect when it is conceded that he was there at the solicitation of Fagan, assisting him in a work that the defendant had directed to be done, and with the knowledge and assent of the defendant's family. Under these circumstances, an estimable citizen, as the case shows, lawfully passing along a public street, is instantly killed by snow and ice cast from the defendant's roof by the party assisting in the work; yet it is contended that the defendant is not liable, because such party was not in his employment, and was using his premises without his express knowledge or authority. It is not doubted that, if the snow and ice had been thrown from Fagan's shovel, the defendant would have been liable; but, forsooth, because Fagan is being aided by Cashan in the same negligent act, and the injury is the result of snow and ice thrown from the shovel of Cashan, the defendant is to escape liability. I am not able to take this view of the case.

The negligence for which the defendant is responsible, if at all, consisted in throwing the snow and ice which incumbered the roof of his house into the public street without exercising reasonable and proper precaution to avoid injuring persons lawfully using the street. Instead of himself superintending the work of clearing the roof, he directed his servant to do it, giving no special instructions as to the mode of doing it, nor restricting the latter in any way from procuring aid. After giving the general direction, the defendant left the premises to attend to his business in the lower part of the city, and did not return until the negligent act that caused the death had been performed. The house, however, was not left tenantless. The defendant's family occupied it. His wife was there; for it appears that, before entering on the employment of removing the snow, she dispatched Fagan upon an errand. Then it was

Althorf *v.* Wolfe.

that Fagan met Cashan, and the latter, being temporarily out of employment, consented to aid him in cleaning the roof Cashan was not a trespasser in the defendant's house, but was admitted to it by the defendant's servant, and with the knowledge and assent of the defendant's family, and those having the control of it. It is urged, with much earnestness, that Cashan, who was an improper person, was on the premises, engaged in the defendant's service, without any authority of knowledge of the defendant. He was there, doubtless, without the personal knowledge or direct authority of the defendant; for he was absent in another part of the city, attending to his business. But I do not understand the case to show that Cashan was working with Fagan on the roof of the defendant's house, unknown to the defendant's wife or family, or to those having the custody and control of the tenement in the defendant's absence, or without their impliedly, at least, assenting to it. If they knew and assented to his being there, it was equivalent to knowledge and assent on the part of the defendant. If not brought on, he was allowed to be on the premises, by the owner; and the latter is charged with knowledge that he was engaged in the particular service, to which he interposed no objection or dissent. I suppose that, if the wife of the defendant, in the absence of the latter, had ordered Cashan to assist Fagan in the work, the defendant would have been responsible. This case shows that he was not there in hostility to the wishes and intention of the defendant's household, but in accordance with them; and, under the circumstances, it should hardly be allowed the defendant to say, "It is true I ordered the work to be done, placing no restrictions on my servant against engaging assistance; my family and household knew that Cashan was aiding him, and tacitly assented to it; but, as I did not know or expressly authorize him to enter my house and engage in my service, I ought not to be liable." In this view of it, the case certainly presents the strange anomaly that two persons may be mutually engaged in the same work on the defendant's house, viz., shoveling snow and ice from the roof, and if that thrown by one of them produces an injury,

the defendant is liable; if by the other, he is not, though the latter is allowed to be upon the premises, and indeed actually brought on by one of the defendant's household. In the one case, the innocent and injured party may have redress for an injury resulting from a misuse of the premises; in the other, as against the owner, he is remediless. This cannot be so. It is not absolutely necessary that the technical relation of master and servant, as between the defendant and Cashan, should exist, or that Cashan should be able to recover of the defendant for his services, to make the defendant liable to a third person. If the injury was the result, substantially, of the negligent act of Fagan, in the course of his employment of clearing the roof, or if Cashan was allowed to be on the premises by the owner, shoveling snow from the roof in so negligent a way that a person in the street is injured, or if the defendant had not taken due and proper care to prevent a negligent or improper person from being about his premises, and in consequence of this an injury happened to a third person, he is liable. The owner or possessor of fixed property is responsible that it be so used that other persons receive no injury; and if he does not take due care to prevent a negligent person from being about his premises, and, in consequence of this, an injury happens, he cannot cast off responsibility. Cashan was brought on the premises by one of the defendant's household, and was allowed to be on the roof of the house, engaged in the work of shoveling snow, by those having the custody of the tenement for the time. In strictness, he cannot be said to have been there against the will of the owner, and wholly without his knowledge or authority.

The request, in substance, of the defendant's counsel was, that the judge should charge the jury that, if they found that the relation of master and servant did not exist between the defendant and Cashan, and that Cashan actually threw the snow and ice that struck Warner and caused his death, the defendant was not responsible. Under the state of facts developed by the case, I think it was not error to refuse so to charge.

Althorf *v.* Wolfe.

It is not contended that there are any other available exceptions in the case; and I am in favor of affirming the judgment of the Common Pleas.

DENIO, J. The defendant had the control of his own house and premises, and was generally responsible for their conduct and management, and was bound to see that his necessary affairs to be carried on in and about them were so conducted that other persons should not receive injury. In laying this down as a general rule, I concede that it is subject to some exceptions: for instance, if his premises should be invaded by a superior force, and injury should be inflicted upon others in the course of such usurped possession, he could not be made liable; and so, if a stranger, without his consent or knowledge, and notwithstanding all usual and proper precautions, should impertinently interfere in the management of his affairs, he could not be made responsible. And so, also, according to several cases, if he had contracted with another to have work done upon his premises, and an injury had been done to a third person by the servants of such contractor. (*Blake* v. *Ferris,* 1 Seld., 48, and cases cited.) But, in this case, the defendant entrusted the removal of the snow and ice from the roof to one of his servants. I admit that this servant ought not to have taken his friend on to the premises, but that he should have done the work himself, and, moreover, that it was a piece of misconduct to admit Cashan upon the roof; and if Fagan did not know Cashan to be a discreet and prudent man, it was an act of negligence. But the defendant, by giving him charge of the business and permitting him to have access to the roof, enabled him to take others there. The defendant does not and cannot deny but that he is responsible for the negligent and wrongful acts of Fagan. If it had been certain that it was that person, and not Cashan, who threw the piece of ice which killed the deceased, the defendant would clearly have been responsible. Instead of accomplishing the mischief in that manner, Fagan, by a negligent and improper act, enabled Cashan to do it. If we keep in mind that the defendant is responsible for

the acts of Fagan, and that Fagan took his comrade on to the roof, and thus enabled the latter to do the mischief, it is difficult to discover any principle which will shield the defendant from responsibility. It is not necessary to consider Cashan as the defendant's servant. He was, rather, the instrument by which Fagan, for whose conduct the defendant was undeniably responsible, did the wrong. The law was long ago laid down thus: "I shall answer to my neighbor for him who enters my house with my leave, or with my knowledge, or who is a guest with me, *or with my servant,* if he, or any of them, does anything, as with a candle or other thing, by which doing the house of my neighbor is burned." (*Beaulieu* v. *Finglam,* Year Book, 2 H. IV., fol. 18, pl. 6.)[1]

There is a class of cases where the master is not responsible for the acts of his servant, on the ground that he was not, at the time, acting in the business of his master, as where he

---

[1] As a specimen of the quaint but vigorous style of the Year Books, the Reporter subjoins a translation, from the law-French, of the case above cited. The Latin of the writ, it is to be supposed, notwithstanding the Code, is still intelligible to the profession in the original.

One brought a writ like this: "*Si Willihelmus Beaulieu, &c., pone Rogerum Finglam, quare cum secundum legem & consuitudinem regni nostri Angliæ hactenus obtenta quod quilibet de eodem regno ignem suum salvo & secure custodiat & custodire teneatur, ne per ignem suum dampnum aliquod vicinis suis ullo modo eveniat: praed' Rogerus ignum suum apud Carlion tam negligentur custodivit quod per defectu debitae custodiae ignis praedicti, bona & cattala ipsius Willihelmi ad valentiam quadraginta librarum in domibus ibidem existentia, ac domus praedictae ad tum & ibidem per ignem illum combusta extiterant, ad dampnum ipsius W. &c.*" And he declared accordingly. Hornby [for the defendant] prayed judgment of the count, "for he has counted on a common custom of the realm, and has not ever said that this custom has been in use [time whereof, &c.]" To which the whole court said: Pass over that, for the common law of the realm is the common custom of the realm. THIRNING [Ch. J.] said: A man shall answer for his fire which, by misfortune, has burnt the goods of another. And some have been of opinion that the fire could not be said to be *his* fire, for this, that a man cannot ever have property in fire: but this opinion was not allowed. MARKHAM [J.]: A man is held to answer for the deed of his servant or of one of his household in such case; for if my servant or one of my family puts a candle in a bracket and the candle falls into the straw and burns up my house and the house of my neighbor also, in such case I shall answer

Althorf *v.* Wolfe.

commits a willful trespass. (*McManus* v. *Cricket*, 1 East., 106; *Vanderbilt* v. *The Richmond Turnpike Co.*, 2 Comst., 479.) But in this case, Fagan was in the service of the defendant, even in procuring Cashan to go upon the house. He was not, it is true, serving him properly, or according to his duty; but it was the master's business, and not his own, that he was engaged in.

I am in favor of affirming the judgment appealed from.

DAVIES and CLERKE, Js., dissented; all the other judges concurring,

Judgment affirmed.

---

to my neighbor for the damage he has received: which was allowed by the court. HORNBY: Then ought he to have had a writ *quare domum suam ardebat vel exarsit.* HULL [J.]: This would be against all reason to put blame or fault upon a man where there was none in him; for the negligence of his servants cannot be said to be his own. THIRNING [Ch. J.]: If a man kill or slay another by misfortune, he shall forfeit his goods; and it is necessary that he get his charter of pardon as of grace. To which the court agreed. MARKHAM [J.]: I shall answer to my neighbour for him who enters my house with my leave, or with my knowledge, or who is a guest with me, or with my servant, if he, or any of them, does anything, as with a candle or other thing, by which doing the house of my neighbor is burned; but if a man from outside my house, against my will, throws fire into the straw of my house or elsewhere, whereby my house is burned and also the houses of my neighbors, for this I shall not be held to answer to them, for this cannot be called a fault on my part, but was against my will. HORNBY: This defendant is undone and impoverished for all his days if the action is maintained against him; for then twenty other such actions will be brought against him for the same matter. THIRNING: What is that to us? It is better that he should be utterly undone than that the law should be changed for his sake. And then they came to issue, that the house of the plaintiff was never burnt by the fire of the defendant. (Easter term, 2d Henry IV, *A. D.* 1401.)