Hans Petersen, Respondent, *v.* William L. Hubbell, as Treasurer of Adams Express Company, Appellant.

*Negligence — a clerk driving an express wagon in place of the regular driver— authority may be implied therefrom— contributory negligence of one standing in the street waiting for a car.*

The regular driver of an express wagon not being present at a time when that wagon was to be driven to the Grand Central Station in the city of New York, a clerk in the office of the express company undertook to drive the wagon to its destination, and in so doing ran over one Petersen, who brought an action

against the express company to recover for the injuries thereby sustained by him. The clerk had never been regularly employed as driver, but had, upon a number of occasions, driven the express company's wagons over this distance on regular trips for the delivery of freight to the Grand Central Station.

*Held*, that in the absence of any rule to the contrary, or of any proof upon the part of the defendant that its officers and agents were ignorant of such action on the part of the clerk, there was sufficient evidence of the implied authority of the clerk to drive the wagon to justify the court in refusing to dismiss the complaint upon the ground that the person driving the wagon was not a servant of the company acting within the scope of his authority ;

That the action of the plaintiff in going into a street to take a horse car, after he had looked both ways and did not see any car or vehicle which was likely to strike him, where he was run over by an express wagon driven at a high rate of speed, did not justify the court in holding as a matter of law that he was guilty of contributory negligence.

APPEAL by the defendant, William L. Hubbell, as treasurer of the Adams Express Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of June, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order entered in said clerk's office on the 9th day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Carl A. De Gersdorff* and *Charles Steele*, for the appellant.

*Henry W. Smith*, for the respondent.

PATTERSON, J. :

The action was brought to recover damages for injuries sustained by the plaintiff, who was thrown down and run over by a horse and wagon belonging to the defendant, and which, as the testimony shows, was, when the accident occurred, actually being employed in the service of the defendant in making a trip between the office of the defendant, at Forty-second street near Fifth avenue, and the Grand Central Railway Station at Forty-second street. There was abundant evidence to show that the person driving the horse was guilty of gross negligence, but the question is raised as to the liability of the defendant for the negligence of that person, it being contended that the proofs show that he was not a servant or employee

of the company, for whose act the company would be responsible under the special circumstances of the case. One Bourne, who was driving the horse at the time the accident occurred, was in reality an employee of the defendant. That fact is not disputed — but he was not a driver, nor was he employed by the company as one of its servants connected with that branch of its business, which consisted in the transportation of merchandise or packages, or the management of its horses and wagons. The general rule of law is too well settled to require the citation of authorities that a master is not liable for the negligence of a person unless that person is a servant employed in and about the particular thing in connection with which that negligence is charged, or, in other words, unless such person is acting within the scope or course of his employment and under an authority actually conferred or one that may be implied from the circumstances surrounding a given case. If, therefore, Bourne, who was driving the wagon on the occasion in question, was merely an employee whose duties were confined to acting in an entirely different capacity from that of driver, and who was without any authority, actual or to be inferred, to drive the horse when the accident occurred, the company would not be responsible for his negligence. The question relates, therefore, to the authority of Bourne to act in the capacity in which he was acting when the accident happened. We consider this to be the real question on this branch of the case, because the whole record shows that the issue went to the jury upon that theory and not upon the claim that the defendant was liable for the act of another servant in surrendering the control of the horse and vehicle to Bourne. There is authority for the contention that in such a case the master would be liable. In *Booth* v. *Mister* (7 Carr. & P. 66) Lord ABINGER held that, in an action on the case for damages for injuries resulting from the negligence with which a defendant's cart was driven, the defendant would be liable, although it should appear that the defendant's servant was not driving at the time of the accident, but had surrendered the reins to a person who was riding with him and who was not in the service of the defendant; and in *Althorf* v. *Wolfe* (22 N. Y. 355) it was held that the defendant was liable for the negligence of a third person who had been called in without the knowledge of the defendant, by his butler, to assist in shoveling snow from a roof.

But the case at bar, under the pleadings and proofs, was left to the jury upon the claim that Bourne was the servant of the defendant authorized to drive the horse on the day of the accident, and on that theory the plaintiffs' case must rest.

The testimony shows beyond contradiction that, a few minutes before the accident occurred, the defendant's wagon was standing in front of the defendant's office, at No. 2 East Forty-second street, and that it was necessary for the wagon to go with a load of merchandise to the Grand Central Station, at which it would be due at about seven o'clock. The regular driver of the wagon was not in attendance, and the person upon whom devolved the duty of driving that wagon to its destination was a helper, who, it appears, was a mere lad about fourteen years of age. In the absence of the driver, and no one else being present but this helper to take the wagon on its regular trip, the clerk employed in the Forty-eighth street office of the defendant took control of the horse and vehicle with the intention, if not for the express purpose, of making the regular trip. If this evidence stood alone, and there were nothing further upon the subject of this clerk's connection with driving the defendant's vehicles, the claim that he was acting as a mere volunteer, and beyond the scope of his employment, and without the consent or knowledge of his employer, might be well founded. But the record shows that that was not the only occasion upon which this same clerk had acted in the capacity of driver of the defendant's vehicles on regular trips. He had previously, on more than one occasion, driven the wagons of the defendant on their regular trips from the Forty-second street office to the Grand Central Station, and it appeared by his own testimony that he had driven this wagon "quite a few mornings on and off;" not for the purpose of delivering freight, he says on his direct examination, but, on his cross-examination, he admits that he never drove the wagon except on regular trips, and when it had a load of freight on it. It was, therefore, established by the testimony of this witness that he had acted for the defendant in driving its wagons when loaded with freight and on regular trips which those wagons had to make in the business of the defendant; and from that testimony it was competent to imply that there was an acquiescence by or on the part of the defendant in this person driving its wagon or

a permission to him to drive it in the absence of the regular driver and on a regular trip. This view of the case may very well have been taken by the court when not a single officer or agent of the defendant or other person in authority was called as a witness to show ignorance of the fact that its wagon had been driven by others than the regular driver or the helper on the necessary or customary trips of the wagon. The testimony of this witness was some evidence of prior acts performed by him in driving defendant's loaded wagons, knowledge of which in the defendant will be presumed until it be shown that those whose duty it was to send out the wagons on their regular trips and direct that feature of the defendant's business were unaware of such acts.

We think, therefore, there was enough evidence on the subject of an implied authority to Bourne to drive the wagon on the occasion in question, there being an entire absence of proof of any rule or regulation of the company or any testimony that its responsible officers or agents did not know that the wagon, in the absence of the regular driver, had on previous occasions been driven by a person who was not employed as a driver, or a helper of the driver, to justify the court in refusing to dismiss the complaint on the ground that the person driving the wagon was not a servant of the defendant acting within the scope of his authority.

It is further claimed by the defendant that the court erred in not taking the case away from the jury upon the ground that the plaintiff was guilty of contributory negligence. What is attributed to him as negligence of his own, tending to bring about the accident from which he suffered injury, is: That at the time he was thrown down and run over he was standing in the middle of the carriageway of Forty-second street, and that he did not exercise sufficient care in looking about him so that he might avoid approaching vehicles. Upon the testimony, as it appears in this record, it cannot be adjudged as matter of law that the plaintiff was guilty of contributory negligence. It was shown that on the morning on which this accident occurred the plaintiff walked up Madison avenue to Forty-second street and reached the southeast corner of Forty-second street and Madison avenue at about seven o'clock. He wanted to take a westerly-bound car on the Forty-second Street railway. When he arrived at the corner he saw a car coming towards him from the

east, which car, at the time he observed it, was in motion, and was from 50 to 100 feet away from him; he looked up and down Forty-second street carefully, and, as he says, he could see as far to the west as Fifth avenue, and that there were no vehicles on the street. He walked out into the middle of Forty-second street, intending to take a green car, but, changing his purpose, allowed that car to pass and was in the act of boarding a yellow car, which was following, when he was struck by the horse and wagon of the defendant and thrown down and injured. When he thus went into the middle of the carriageway, there was no vehicle in sight and nothing which he had any reason to suppose would reach the spot at which he was standing before he could board the yellow car. It cannot be said, as matter of law, that he was bound to anticipate that a vehicle driven at an excessive rate of speed and which was not in sight when he left the sidewalk would run down upon him. It was, at the most, a question of fact for the jury to say whether he had exercised that care and prudence which would be required of him under the particular circumstances of the case as they existed at that time, and that question of fact was left to the jury by the judge in his charge, and they were instructed properly upon that subject. They were told that the plaintiff was obliged to anticipate danger and carefully use his senses, by guarding himself, by looking and continually watching to prevent being injured in the street where he placed himself, and that it was for the jury to say whether he had done all in that respect that could reasonably have been required of him under the circumstances in which he was then placed.

There was no error in the ruling of the court in either of the matters we have considered, nor was there any material error committed on the trial of the cause which calls for a reversal of the judgment.

The judgment and order appealed from must be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, WILLIAMS and INGRAHAM, JJ., concurred.

Judgment and order affirmed.