(19 Misc. Rep. 693.)

### PEOPLE ex rel. DONNELLY v. RIGGS.

(Supreme Court, Special Term, Onondaga County. March, 1897.)

1. MANDAMUS—TO PUBLIC OFFICER—JUDICIAL ACTS.

A quasi judicial duty is imposed on the clerk of the board of supervisors by Laws 1892, c. 715, which provides that the designation of two newspapers in each county, representing the two principal political parties, to publish the Session Laws, shall be signed by a majority of the supervisors belonging to the respective parties, and filed with the clerk of the board of supervisors, and that said clerk shall notify the secretary of state of the papers designated.

2. NEWSPAPERS—DESIGNATION OF OFFICIAL PAPER—REVOCATION.

A supervisor who has signed such designation may, before it is filed with the clerk, withdraw his signature.

Application by Charles J. Donnelly for writ of mandamus against Arthur Riggs, clerk of the board of supervisors of Lewis county. Denied.

Application for a writ of peremptory mandamus, requiring the above-named defendant to notify the secretary of state that the Lewis County Courier was designated by the Democratic members of the board of supervisors of Lewis county, during the annual session of 1896, to publish the session laws, etc., as provided by section 3, c. 715, Laws 1892, which provides that "it shall be the duty of each board of supervisors, * * * at their annual meeting or at any special meeting called for the purpose, to appoint the printers for publishing the laws in their respective counties. The appointment shall be made in the following manner: The members of the board of supervisors representing, respectively, each of the two principal political parties into which the people of the county are divided, or a majority of the members of the board of supervisors representing, respectively, each of such political parties, shall designate in writing a paper fairly representing the political party to which they respectively belong, to publish the laws, and such designation shall be signed by the members making it and filed with the clerk of the board of supervisors, and the two papers so designated shall publish the laws. * * * The clerks of the several boards of supervisors shall, on or before December

thirty-first of each year, notify the secretary of state of the papers selected by the various boards to publish the session laws."

C. D. Adams, for application.

Merrell, Ryell & Merrell and F. C. Schraub, opposed.

HISCOCK, J. At its regular session in 1896, the board of supervisors of Lewis county was composed of 18 members, of whom 10 were Democrats and 8 Republicans. The Republican members of the board so designated the Republican paper that there is no question raised about it. November 12th to 14th a paper designating the Lewis County Courier, of which the relator claims to be the proprietor, was signed by six of the ten Democratic members of the board, including one Glenn, and delivered to one Katsmayer, to be by him filed with the clerk of the board. Thereafter said Glenn, having attempted in vain to procure from said Katsmayer an opportunity to erase his name from said paper then in the possession of the latter, and on or about November 16th, signed and filed with the clerk of said board a paper whereby, in substance, he gave notice that he had withdrawn, and thereby did withdraw, his name from the paper designating said Lewis County Courier, as aforesaid, and directing said clerk not to receive or file said paper with his name thereon. Thereafter, and on or about November 18th, the original designation signed by Glenn, as aforesaid, was filed with the said clerk; and on or about the same day another paper was signed by said Glenn and four other Democratic members of the board, designating a paper other than and in the place of said Lewis County Courier, which was subsequently filed with said clerk. The defendant, as clerk of said board, did not file with the secretary of state notice of any designation of any Democratic paper, but, in effect, simply made return to him of the various papers which were made and filed in the matter, and above referred to; and, as above stated, this proceeding is now instituted to compel him to file a notice with the secretary of state to the effect that said Lewis County Courier has been designated under the statute as the Democratic paper.

If this court had decided that the Lewis County Courier, represented by the above-named relator as its proprietor, had been designated by a majority of the Democratic members of the board of supervisors as the paper to publish laws, etc., I have some doubt even then whether it would have the right to grant the writ asked for in this case, peremptorily requiring the clerk to accept its judgment, and file a notice that said paper had been so designated. If the view urged by relator's counsel is correct, that the clerk of the board occupies with respect to this proceeding a position purely and absolutely ministerial and clerical, and without any right to exercise judgment or discretion as to whether a paper has been properly designated, it would seem that in a case like this, where conflicting claims were made and conflicting papers filed with him, his duty would be best discharged by doing as he has done, viz. returning to the secretary of state just the proceedings and papers which had been taken before and filed with him. It does not seem to me, however, that his position is so entirely mechanical and deprived of judgment as is claimed

by the relator, but that, of necessity, he is invested with certain powers of discretion and judgment. The statute requires that he shall file with the secretary of state a notice stating what papers have been designated. The statute requires that the paper of each party shall be designated by a paper signed by at least a majority of the supervisors belonging to that party. Before filing the notice mentioned with the secretary of state, it seems to be necessary that the clerk should determine how many members of the board there are belonging to the different parties, and whether, in fact, a paper has been signed by the members or a majority thereof belonging to each party. This would call upon him, for instance, to determine not only the number of supervisors in the whole board belonging to the party, but the number who had actually signed the paper; whether the signatures appended to the paper were, in fact, those of the individuals purporting to have signed; whether an erasure had been made of any name on the paper; and why should he not be permitted to determine whether a name purporting to be upon the paper had not been taken therefrom by another paper or notice, as well as by a physical erasure upon the first paper? If this view is correct, and the clerk was not only permitted, but compelled, before filing the notice now sought by relator, to determine and judge in a quasi judicial way whether the proper designation had been made and filed with him, then it is well settled that this court cannot make this decision for him, and by mandamus compel him to make it as his own. Howland v. Eldredge, 43 N. Y. 457.

Without dwelling more, however, upon this question, and assuming that this court can compel said clerk to file the notice desired if the paper in question has been, as a matter of fact, properly designated, I still do not think that this application should be granted. I do not believe that relator's paper has been so designated as to entitle him to the writ asked for. This opinion and decision turns upon the right of the supervisor Glenn to cancel or withdraw his signature from a designation after it had been once signed thereto. It will be remembered, as above stated, that Glenn, with five other Democratic members, constituting a majority of the whole number thereof in said board, signed the original designation thereof November 12th to 14th. His affidavit is uncontradicted to the effect that he was induced to so sign it through representations as to the character and party standing of the Lewis County Courier, which he afterwards ascertained to be untrue, and also upon condition that relator would pay certain costs and expenses incurred by him in prior unsuccessful proceedings against the county, and that when he ascertained that the representations and conditions under which he signed were incorrect, and were not to be fulfilled, he went to his fellow supervisor, who had the possession of the paper, and attempted unsuccessfully to erase his name therefrom. There is no controversy that, however these facts may be, he did, upon November 16th, and two days before the designation was filed with said clerk, file with said official a notice withdrawing his name from said designation, and canceling his action with reference thereto, and thereafter signed an instrument designating another paper. It seems to me that he had the right to do this, and

to thereby annul his first action.    The statute provides that a designation such as is under discussion "shall be signed by the members making it, and filed with the clerk of the board of supervisors, and the two papers so designated shall publish the laws." These two acts, therefore, of signing the paper, and filing it with the clerk, were both clearly essential to complete and consummate the designation.    Until the paper was filed with the clerk, the designation was not complete, and the newspaper had not been designated; and certainly, up to the point of the designation being so perfected by such filing with the clerk, I do not see any reason why a supervisor should not be allowed to change his mind and vote upon the subject.    The uncontradicted affidavits in this case show that there was sufficient reason for the change of mind of Glenn.    At least, it is not contended that he was animated by any corrupt or improper purpose.    At the time that he changed, nobody had become vested with any rights under the original paper, because it and the designation which it purported to make had not become so complete as to permit anybody to acquire any such rights.    The relator, Donnelly, who has a personal interest in the matter, had not acquired any rights up to that point; and certainly the public, whose only interest is in a proper and lawful compliance with the statute, does not appear to have been injured in any way.    In fact, the rule of law contended for by relator might very well accomplish unfortunate results; for certainly cases can easily be conceived where a supervisor, having been induced by misrepresentation to sign a designation of a paper unfit and improper under the statute, ought, in the public interests, to have an opportunity to correct his mistake up to a certain time; and, whatever may be the case after the appointment has been filed with the clerk, there seems to be no good reason why his opportunity for change and correction should not extend up to that point.

The right claimed in behalf of Glenn to change in the manner he did seems to involve facts and considerations largely analogous to those which arise when a member of a legislative body, having voted upon a roll call, elects to change his vote from one side to the other before the voting is consummated by the announcement of the result.    This is a common occurrence, and I am not aware that its legality has ever been questioned.

The court, in People v. Monroe Co. Sup'rs, 60 Hun, 328, 331, 14 N. Y. Supp. 867, seems by implication to sustain the right to make the change in question when it says:

"Very little need be said upon the subject of the power of the Democratic members of the board to change their designation of a newspaper when once legally made. In my judgment, they had no such power where the certificate making the same had once been filed with the clerk of the board, and had been adopted by resolution of the board, as was done in this case."

These views lead me to deny the application for a writ of peremptory mandamus, with costs, and render unnecessary a discussion of the other questions raised by defendant.

Application denied, with costs.