NORRIS et al. v. WYOMING COUNTY TIMES et al.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. STATUTES—PUBLICATION—DESIGNATION OF NEWSPAPER—VALIDITY.
    Laws 1898, p. 1014, c. 349, § 19, which provides that the members of the county board of supervisors, representing respectively each of the two principal political parties into which the people of the county are divided, shall designate a newspaper fairly representing the party to which they belong to publish the session laws, authorizes a Republican elected a supervisor from a town on the Democratic ticket to join with the Democratic members of the board in selecting a democratic paper to publish such laws in a county where the Democratic and Republican parties are the two principal parties.

Appeal from Trial Term, Wyoming County.

Action by Frank Norris and another against the Wyoming County Times and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Eugene M. Bartlett, for appellants.
Frank W. Brown, for respondents.

ADAMS, P. J. The plaintiffs are the owners and publishers of a weekly newspaper known as the Democratic Review, which is published at the village of Attica, in the county of Wyoming, in this state. The county of Wyoming consists of 16 towns, each of which is entitled to one representative in the board of supervisors of the county; and at the annual session of such board in the year 1897 the Democratic Review was duly designated by the Democratic members of the board as one of the papers to publish the session laws of the following year. In pursuance of such designation, the plaintiffs published the laws of 1898, and also those of 1899, claiming that it was legally authorized to publish the latter by reason of the failure of a majority of the Democratic members of the board in the year 1898 to designate another paper for that purpose, such authority

being found in the statute regulating the publication of the session laws of the state, which reads as follows, viz.:

"The members of the board of supervisors in each county representing, respectively, each of the two principal political parties into which the people of the county are divided, or a majority of such members, representing, respectively, each of such parties, shall designate in writing a paper fairly representing the political party to which they respectively belong, regard being had to the advocacy of such paper of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county, to publish the session laws and concurrent resolutions of the Legislature required by law to be published, which designation shall be signed by the members making it and filed with the clerk of the board of supervisors. If a majority of the members of the board representing either of such parties cannot agree upon a paper or shall fail to make a designation of a paper, or papers, as above provided, then in such case, the paper or papers last previously designated in behalf of the party or parties whose representatives or a majority of them, have failed to agree shall be held to be duly designated to publish the laws for that year, and any designation of a paper or papers made contrary to the provisions of this section shall be void." Laws 1898, p. 1014, c. 349, § 19.

It is conceded that the two principal political parties into which the people of Wyoming county were divided in the year 1898 were the Republican and the Democratic, and it seems that in that year there were six members of the board whose right to participate in the selection of a paper representing the latter party is unchallenged, but these six were divided in their preferences, three of them favoring the plaintiffs' paper and three the Wyoming County Times, a weekly paper published at the village of Warsaw by the defendant Underhill, each of which papers, it may be said, fairly represented the political views of the Democratic party, although the circulation of the Times was some four or five times as large as that of the Democratic Review. In these circumstances the defendant Felch, who was a supervisor from the town of Castile, united with the three supervisors who favored designating the Times as the representative Democratic paper, and thereupon the clerk of the board, in compliance with the requirements of the statute, certified such designation to the Secretary of State. It is now claimed by the plaintiffs that such designation was illegal by reason of the fact that Felch, whose vote was necessary to constitute a majority of the Democratic members of the board, was not a member of that political faith, but was, and always had been, and still is, a Republican.

Fortunately, there is practically no dispute as to the facts of this case, and, when understood, it remains only to determine how far they support this contention of the plaintiffs. That Felch is, and at the time of his election was, and always had been, a Republican in his political affiliations, so far as the cardinal principles of that party are concerned, is not denied; and it appears that in the year 1897 he was elected supervisor of his town upon the Republican ticket. It further appears that he was a candidate for renomination by his party in 1898, but was defeated in the caucus, whereupon the Democrats took him up, placed his name at the head of their ticket under the regular party symbol, and, with the aid of his personal friends in his own party, elected him over the regular Republican candidate.

He testified that he voted the entire ticket nominated by the Democratic party that year, which was of a composite character, containing the names of both Democrats and Republicans, and that after the election he was requested by some of his Democratic associates upon the board to act with them in any matter of a political nature which might come before that body. Apparently it was well understood that the only measure likely to arise of a purely political character was the selection of a paper to publish the session laws, and Felch testified that he agreed to act with the members of that party in making such selection; that he went to the regular session of the board with the preconceived and avowed intention of acting with the Democratic members in this particular; that he carried out such intention by joining three of his Democratic associates in selecting the Times as a representative of that party; and that he so acted for the reason that, in view of the large circulation of that paper, he thought it was for the interest of the public that it should publish the session laws, rather than a paper of much smaller circulation. Both the Times and the Review are Democratic in their politics, so that, as already stated, the simple question presented upon this appeal is whether or not the defendant Felch, in the matter of selecting papers to publish the session laws, had any right to act with the Democratic members of the board as a representative of that political party. We are of the opinion that this question must be answered in the affirmative; that Felch, having been elected upon the Democratic ticket, and in recognition of his obligation to that party announced at the solicitation of some of its members that he would vote with them upon questions involving political considerations only, was a representative of that party to all intents and purposes within the meaning of the statute which provides the manner in which the publication of the session laws in each county shall be accomplished. Laws 1898, p. 1014, c. 349, § 19. True, he was not a Democrat in principle; but he had been selected by the electors of that party as its representative from the town where he resided, with full knowledge of his general political preferences, as we must assume; he had been asked by several of his Democratic colleagues upon the board to co-operate with them in the selection of a paper; and his right to do so was not questioned by any one at the time the designation was made, but, upon the contrary, was apparently acquiesced in by the three members who voted for the plaintiffs' paper. While the ostensible object of the statute in question is to give publicity to the laws of each session of the Legislature, it is quite apparent that the furnishing of patronage to the papers representing the two political parties of the state in their respective localities is a matter which was not altogether absent from the legislative mind when it was enacted, and, in order that such patronage might be equally and satisfactorily bestowed, the responsibility of selecting the papers in each county was cast upon the "representatives" of the respective parties in the boards of supervisors, and, if one of these parties deliberately selects for its representative a person of some other political faith, the person thus selected, we are persuaded, is none the less the representative of the party selecting him. To illustrate: Suppose the Democrats

of the town of Castile had nominated and elected as against the regular Republican candidate for supervisor a Prohibitionist or a Socialist, would it be claimed that the person thus elected could not represent the party selecting him in matters purely political? He might not "belong" to that party in the sense that he had adopted all its views in lieu of those formerly entertained by him, but he would nevertheless represent that party in the body of which he was a member, and to that extent he might be said to "belong" to it for the time being. At all events, in acting with it he would, in our opinion, be conforming to the intention of the Legislature as expressed in the requirements of the statute in question.

Our attention has been directed by the appellants' counsel to the case of Donnelly v. Riggs, 19 Misc. Rep. 693, 45 N. Y. Supp. 53, and that of the People ex rel. v. Supervisors of Monroe County, 60 Hun, 328, 14 N. Y. Supp. 867, but we fail to discover anything in either which is in any sense at war with the views to which we have given expression. On the contrary, it was said in the latter case that the statutes upon the subject here under consideration indicate a clear public policy that no opportunity shall be given to members of either political party to designate from motives of false economy (or, it might be added, from any other motives) a newspaper not calculated to give publicity to the session laws; and we heartily concur in the view that such ought to be the policy of the law, even if it is not made so plain as the learned justice who wrote the opinion in that case seemed to think it was, and therefore, because of the fact that the defendant paper is much better calculated to give extended publicity to the statutes than the one published by the plaintiffs, and that in selecting it for that purpose the defendant Felch concededly acted in good faith, and from correct motives of public policy, and also because of the reasons hereinbefore stated, our conclusion is that the decision of the trial court was correct and should be affirmed.

Judgment affirmed, with costs. All concur.