(68 Misc. Rep. 182.)

## BELLER v. LEVY et al.

### (City Court of New York, Trial Term.  June, 1910.)

1. MUNICIPAL CORPORATIONS (§ 706*)—STREETS—INJURIES TO TRAVELERS—CONTRIBUTORY NEGLIGENCE.

Plaintiff, before crossing a street, waited to allow a wagon to pass, and then started to cross. When about three feet from the curb, she was struck by defendant's wagon, then being driven by one of defendant's employés. She testified that as she stepped off the curb onto the crosswalk she looked, and, though she had a clear view, she saw no wagon approaching; but before she could escape she was struck by the shaft of defendant's wagon, which approached without warning. *Held*, that she was not negligent as a matter of law under the rule that a person, who looks and sees no wagon approaching for a sufficient distance to warrant an ordinarily cautious person in the belief that it is safe to attempt to cross, has the right to proceed relying on the assumption that a warning would be given of an approaching vehicle at an excessive rate of speed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706;* Highways, Cent. Dig. § 473.]

2. MASTER AND SERVANT (§ 302*)—INJURY TO THIRD PERSON—AUTHORITY OF SERVANT.

A master is not liable for the negligence of a person unless a servant employed in and about the particular thing in connection with which the negligence is charged, or unless acting within the scope or course of his employment, and under the authority actually conferred.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1217; Dec. Dig. § 302.*]

3. MASTER AND SERVANT (§ 302*)—INJURIES TO THIRD PERSON—DELEGATED ACT—VOLUNTEER.

Plaintiff was injured by being struck by defendant's wagon negligently driven by defendant C., who was employed as assistant bookkeeper with no duties concerning the driving of defendant's wagon, but who drove the wagon on the occasion in question, at the request of the regular driver for his accommodation. It was also shown that C. had driven the horses and wagon on other occasions. *Held*, that C. was not a mere volunteer, acting without the scope of his employment, but was driving under the delegated authority of defendant's regular driver, and that defendant was responsible for his acts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1219; Dec. Dig. § 302.*]

4. NEW TRIAL (§ 162*)—EXCESSIVE VERDICT—REDUCTION—TRIAL TERM—JURISDICTION.

The court at Trial Term has jurisdiction to reduce a verdict for excessiveness as a condition to denying a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 324; Dec. Dig. § 162.*]

5. DAMAGES (§ 131*)—EXCESSIVENESS—PERSONAL INJURIES.

Plaintiff was struck and injured on a street crossing by defendant's wagon and sustained injury to the knee. She was in a hospital for 11 days and then confined to her home for 9 weeks, when she entirely recovered. She was earning, when working, on an average of $7 a week. *Held*, that the verdict awarding her $750 was excessive, and should be reduced to $350.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 358; Dec. Dig. § 131.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Frieda Beller, an infant, by Dora Rosenberg, her guardian ad litem, against Israel Levy and another. Verdict for plaintiff on defendants' motion for a new trial. Denied conditionally.

Victor Deutsch, for plaintiff.
Benj. F. Maged, for defendants.

FINELITE, J. A jury having found a verdict in favor of the plaintiff for the sum of $750, a motion was immediately made by the defendants to set aside the verdict upon the ground that it was contrary to law, contrary to the weight of evidence, and upon all the grounds set forth in section 999 of the Code of Civil Procedure.

The defendants in urging the court to set aside the verdict, based their application on two grounds, to wit:

First. That the infant plaintiff did not show herself free from contributory negligence, in that she did not use that degree of caution which the law required of her, and was therefore guilty of contributory negligence as a matter of law.

Second. That the driver of said wagon was not acting within the scope of his authority, but, on the contrary, transcended his authority, and that he was not acting on behalf of defendants at the time of the accident.

These grounds will be taken up separately.

It appears from the facts herein that the infant plaintiff, while going to her work, and arriving at the northeast corner of Bleecker and Lafayette streets, waited until a wagon was allowed to pass, and as soon as that wagon passed she started to cross the street. She left the curb, and when about a distance of three feet from the curb she was struck by defendants' wagon, which was then being .driven by an employé of defendants. She also testified that when she stepped off the curb on the crosswalk she looked north and south, her view was in no way obstructed, and could see a great distance in front of her. The defendants' employé, in the wagon at the time, gave plaintiff no warning before the shaft of the wagon struck said plaintiff, knocked her down, and the right-hand wheel of the wagon passed over her leg and injured her. The plaintiff's witnesses testified to the fact that the wagon was then going at a rate of about six to eight miles an hour when said plaintiff was knocked down and injured as aforesaid.

The defendants contend that they are not liable for plaintiff's injuries for the reason that Sheehan, their regular driver, was not in control of the wagon at the time it injured the plaintiff; that their regular driver, Sheehan, on the evening preceding the accident, requested one Cohen, an assistant bookkeeper of defendants, to take the wagon from the stable and drive it to defendants' place of business, as he (Sheehan) was going to attend a place of amusement that evening; and that Cohen agreed to oblige him by driving said wagon to defendants' place of business, unknown to defendants. And further contends that Sheehan had no authority to delegate Cohen to drive the wagon for him (Sheehan), and by so doing was not acting within the scope of his employment. The defendants testified that Cohen was their assistant bookkeeper, and had no authority to drive their

wagons. This is corroborated by Cohen. Sheehan testified as to the request made by him to Cohen. I have here stated in substance the evidence produced upon the trial.

From the evidence as to the happening of the accident, the negligence of the defendants' employé then acting as driver, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence when she left the curb, and when in the crosswalk about three feet from the curb, and looking north and south on Lafayette street, and having a clear view, and seeing no wagon approaching, should expect that some warning would be given by the driver of the wagon of its approach in time to enable her to escape.

A person who looks and sees no wagon approaching for a sufficient distance to warrant an ordinary cautious person in believing that it is safe to attempt a crossing has the right to proceed, relying on the assumption that a warning would be given of an approaching vehicle at an excessive rate of speed and which was not in sight when she left the sidewalk, would run down upon her, and the absence of additional facts calling for the exercise of greater vigilance cannot be said to be negligence as a matter of law if she does not thereafter look in the direction from which danger happens to come. It was at the most a question of fact for the jury to say whether she had exercised that care and prudence which would be required by her under the particular circumstances of the case as they existed at the time.

The contention made by defendants in reference to the driver Sheehan not acting within the scope of his authority, but on the contrary transcended his authority by delegating Cohen to drive the wagon on the morning of the accident, and that said Cohen had no right or authority to drive the wagon at that time and was acting upon the request of a fellow employé who had been employed to drive the wagon, and thereby defendants were relieved from liability, is rather a novel proposition which has no force, nor can it seriously be contended by defendants. The all-important question presents itself: Was Cohen, at the time of the occurrence in question, subject to the direction and control of the defendants, and was he engaged in the business of the defendants?

The general rule of law is too well settled to require the citation of authorities that a master is not liable for the negligence of a person unless that person is a servant employed in and about the particular thing in connection with which that negligence is charged; or, in other words, unless such person is acting within the scope or course of his employment and under the authority actually conferred on one that may be implied from the circumstances surrounding a given case.

If, therefore, Cohen, who was driving the wagon on the occasion in question, was merely an employé, whose duties were to act as assistant bookkeeper and confined to act entirely in that capacity, and who was without any authority, actual or to be inferred, to assist Sheehan in driving the horse and wagon when the accident occurred, the defendants would not be liable for his negligence. The question relates, therefore, to the authority of Cohen to act in the capacity in which he

was acting when the accident happened. Cohen admitted that he drove this horse and wagon on other occasions to the place of business of the defendants, and from that testimony it was competent to imply that there was an acquiescence by or on the part of the defendants that permission was given to him to drive in the absence of Sheehan, their regular driver. The defendants would be liable, nevertheless, upon the theory, for the act of the driver Sheehan in surrendering control of the horse and wagon. There is authority for the contention that in such a case the master would be liable.

The distinction which arises between the acts of a mere volunteer and one acting under the delegated authority of a regular appointed servant while in the prosecution of the master's business has been recognized and pointed out in the case of Petersen v. Hubbell, 12 App. Div. 372, 42 N. Y. Supp. 554, wherein it was shown that Bourne, the servant, whose negligent act caused the injury, took charge of the truck and horses at his own instance and without any request of the regular driver, and without the defendant's knowledge, and was thereby a volunteer. The court held that, if the issues in the case had turned upon the defendant's liability for the acts of another servant in surrendering the control of the horse and vehicle to Bourne, the master would have been liable, citing Booth v. Mister, 7 Car. & P. 66, and Althorf v. Wolfe, 22 N. Y. 355.

In Althorf v. Wolfe, supra, where the plaintiff's intestate was killed by being struck by ice and snow thrown from the roof of the defendant's house, while passing along the street below, the defendant had directed one Fagan, his coachman, to clear off the snow from the roof of the house. Fagan asked one Cashan to help him. They both went upon the roof and both worked on the roof, throwing off the snow. Cashan was assisting at his own suggestion and without authority from the defendant to employ any one. It was contended the defendant was not liable; but the court held to the contrary and said it was immaterial whether the intestate was killed by ice thrown by Cashan or Fagan; that in either view it was substantially the act of Fagan. The court cited Booth v. Mister, 7 Car. & P. 66, wherein the defendant was held liable for injuries to the plaintiff's cabriolet, resulting from the negligent manner in which defendant's cart was driven, although it appeared that defendant's servant was not driving at the time, but had intrusted the reins to a stranger, who was driving with the servant, and not in the service of the defendant; the liability being placed on the ground that the negligence causing the injury was substantially the act of the defendant's servant, who was in the cart, and the master had put it in the power of the servant to do the injury.

In Cosgrove v. Ogden, 49 N. Y. 255, 257, 10 Am. Rep. 361, the defendants were lumber dealers, and the plaintiff, a child, was injured by the falling of a pile of lumber placed in the street by the defendants' employé who had been instructed by defendants not to pile the lumber there. The defendants were held liable for the accident, as the act was done by the servant in the prosecution of their business, and they were not relieved from responsibility by the servant's departure from their instructions in the manner of doing it. The court said:

"The test of the master's responsibility for the act of his servant is not whether such act was done according to instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do."

See, also, Kilroy v. D. & H. Co., 121 N. Y. 22, 24 N. E. 192; Hill v. Sheehan, 20 N. Y. Supp. 529, 48 N. Y. St. Rep. 410; Wellman v. Miner, 19 Misc. Rep. 644, 44 N. Y. Supp. 417.

The defendants further contend that the damages in the sum of $750 fixed by the jury for the injuries suffered by the plaintiff are excessive and should be reduced. The plaintiff asserts that, the jury having passed upon the question of fact, the court in his discretion has no right to disturb their verdict. Layman v. Anderson & Co., 4 App. Div. 124, 38 N. Y. Supp. 883; Von Der Born v. Schultz, 104 App. Div. 94, 93 N. Y. Supp. 547. In Branagan v. L. I. R. R., 28 App. Div. 461, 51 N. Y. Supp. 112, the trial court held:

"If it were not that he considered the weight of precedent against it, he would certainly grant a new trial unless plaintiff stipulated to reduce the verdict."

Whereupon the Appellate Division (Second Department) said as follows:

"The final sentence (quoting the above) may be open to the construction that the learned justice stated that the weight of precedent was against the right of the trial court to set aside or reduce a verdict at a Trial Term, and it is only for the reason that we take occasion to say the residence of such a power in the court at Trial Term is inherent and beyond question and needs no citation of authority. We have had frequent occasion during the existence of the present Appellate Division of the Supreme Court to exercise the power of reducing verdicts which we consider excessive; but this power can never be used more satisfactorily than at the Trial Term, where the court has the opportunity not only of seeing and hearing the parties and witnesses, but judging of their behavior on the stand. It is regretted that this power has not more frequently been resorted to in cases where it is so clear that such manifest injustice has been done that the Appellate Division has been constrained to review and reduce the amount of verdicts which have apparently been rendered under the influence of passion, prejudice, partiality, sympathy, or misconception. We have no hesitation in giving practical effect to the opinion of the learned justice of Trial Term and reducing the amount of the verdict. * * *"

In the case at bar the plaintiff's knee was injured. She was in a hospital for a period of 11 days and then confined to her home for a period of about 9 weeks, when she then entirely recovered and was able to resume her work; she was earning when working on an average the sum of $7 per week; and it is apparent to me that the jury in awarding her the sum of $750 must have been influenced by sympathy or partiality.

The amount so awarded is excessive for the injuries received and should be reduced to the sum of $350, to which reduction the plaintiff should stipulate, and on her refusal to so stipulate I order a new trial without costs.