Mary Elizabeth Fleming McCarthy, Appellant, v. James Rorrison et al., Defendants. James Rorrison, Appellee.

Gen. No. 38,050.

Opinion filed December 30, 1935.

RYAN, CONDON & LIVINGSTON, of Chicago, for appellant; JOHN M. TUOHY, of Chicago, of counsel.

ECKERT & PETERSON and GEORGE C. BLISS, all of Chicago, for appellee; A. R. PETERSON and OWEN RALL, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued James Rorrison, Chicago Auditorium Association, a corporation, and Melvin E. Berg in case.

The amended declaration proceeds against Rorrison and Berg only. At the close of plaintiff's case a verdict was directed for Berg and Rorrison's motion for a directed verdict was overruled. At the close of all the evidence Rorrison submitted a like motion, which was overruled. A verdict was returned finding Rorrison guilty and assessing plaintiff's damages at $5,000. Rorrison then moved the court to enter judgment for him "notwithstanding the verdict," for the following reasons:

"1. The Court erred in refusing to instruct the jury at the close of all of the evidence to find the defendant, James Rorrison, not guilty.

"2. The Court erred in refusing to instruct the jury at the close of all the evidence that there could be no recovery under the first or second counts of the amended declaration.

"3. The evidence does not fairly and reasonably tend to show that John Johnson, the driver of the automobile which collided with the motor vehicle in which plaintiff was a passenger, was at the time and place in question the agent and servant of the defendant, James Rorrison.

"4. The preponderance of the evidence established the fact that John Johnson was not authorized to drive or operate defendant's automobile at the time and place in question."

The trial court sustained the motion and entered judgment in favor of defendant. Plaintiff appeals.

On December 30, 1930, at about 10:15 p. m., plaintiff was in an automobile owned by Berg, which was being driven in a westerly direction upon a public highway in Chicago, then known as Seventh street, and while it was crossing the intersection of that street with another highway, then known as the inner Outer Drive, an automobile owned by defendant Rorrison and operated by John Johnson, and driven in a northerly direction in the inner Outer Drive, crashed into Berg's

car, seriously injuring plaintiff. The accident occurred in a part of Chicago known as Grant Park. The inner Outer Drive is the first thoroughfare east of Michigan avenue. Johnson was employed as a doorman by the Auditorium hotel, located at Congress street and Michigan avenue.

Defendant states: ''No contest will be made as to the amount of plaintiff's damages nor the negligence of John Johnson, the colored doorman of the Auditorium Hotel, to whom the defendant Rorrison delivered his car.''

Defendant concedes that in passing upon his motion the trial court had no right to pass upon the credibility of the witnesses or the weight of the testimony, and that his ruling can only be justified upon the theory that the evidence most favorable to plaintiff, with all its reasonable inferences, fails to make out a *prima facie* case upon a necessary element of her case, viz., that Johnson was the servant or agent of defendant at the time and place in question. Plaintiff contends that there is evidence in the record that fairly and reasonably tends to show that Johnson, at the time and place of the accident, was driving with the authorization and upon the business of defendant Rorrison, and, therefore, the court erred in granting defendant's motion. Defendant contends that Johnson was not his agent or servant at the time and place of the accident; ''that the evidence was undisputed in all material matters so that the court properly decided the question submitted as one of law in holding that all of the evidence taken together, drawing reasonable inferences most favorable to the plaintiff, failed to prove that John Johnson was the agent or servant of the defendant at the time and place of the accident.''

In passing upon defendant's motion the trial court was governed by the established rule that the evidence most favorable to plaintiff, with all its reasonable inferences, must be taken as true.

Defendant, called as a witness by plaintiff (under section 60 of the new Practice Act), testified that on the evening in question he went to the Auditorium Hotel to see some friends who were stopping there; that he was going to take them to the train and when he arrived at the hotel he told the doorman, Johnson, that he would want the car back in about an hour and not to bury it, as he wanted it back there to take some people to the train; that he gave the doorman instructions as to just where to park the car; "I don't remember the time of the train leaving, or just exactly whether I told him that it would be an hour or an hour and a half, but it was some short period of time like an hour, something like that"; that he did not tell plaintiff and her sister that he told the doorman to take the car and park it some place, "but don't bury it." Plaintiff testified that sometime after the accident she and her sister, Gertrude Berg, had a conversation with defendant in which he stated "that he and some friends at the Auditorium Hotel drove up to the Auditorium Hotel and that anyone would think that a man wearing a uniform would be capable of handling a car and he turned the car over to the colored man and he said, 'Take the car and park it some place but don't bury it. I want it back in time to take these folks to the train' "; that he also stated that the train was to leave around 10:30. Gertrude Berg testified that defendant told them "that he had some guests at the Auditorium Hotel and when he drove up to the hotel the doorman was there and he told the doorman to take his car and park it some place but not to bury it, that he wanted to take friends to a train at 10:30, and he said one would think a doorman garbed in a uniform would be capable of handling a car." Defendant, called as a witness in his own behalf, testified that he had been at the Auditorium Hotel several times before that night; that on that night he arrived at the hotel "somewhere between eight and nine o'clock"; that the doorman came to his car with

tickets in his hand that "they give you when they take your car"; that he had received tickets from the doorman "before at times for parking" his car; that before that night, after he turned his car over to the doorman, it had been kept at the Wabash & Harrison garage, "a ramp garage," located on the west side of Wabash avenue and south of Harrison street; that sometimes when he arrived at the hotel the doorman came up with a ticket "and you would put it in your pocket," and sometimes they do not happen to have them with them and you give them your room number "and they give it to a boy and send it to the box of the room where you are going; . . . I pulled up to the curb and told the doorman to park my car. . . . 'Take it over to the garage and tell those people not to bury it.' . . . I had been down there before and I had to wait half an hour for my car. They go over these ramp garages and get them behind three or four cars and then they have to move those cars and if they get jammed up you have to stand around for a half an hour sometimes while they get it out. . . . I told him not to bury it. It is a common term in garages and the garage business. It means don't get it back where you can't get it out. I told them not to get it back of another bunch of cars where they can't get it out. . . . I told him at the time I wanted this car in about an hour. I was going to be gone a couple of hours, but you say two hours to them, they take those cars over there and if they say 'He is going to be back in two hours', they put it in back of a bunch of cars, and if you say one hour they leave it out in front. . . . The garage always takes the car and puts it up and brings it back but you make your—you leave the car with the doorman and he calls the garage. He has a telephone right there and the garage has hikers and they send over these hikers and take the car over to the garage and the hiker brings the car back to you. Q. When

you told him you would want it in that way what did he say to you? A. He said, 'Well, if you are only going to be gone an hour or so I will pull it around to the side of the hotel and leave it there.' I said, 'Don't *you* get a ticket on that because I would rather pay the garage than have a fine and have to go down there for it.' . . . I told him I would call for the car when I wanted it. . . . That train left at 11:30. . . . And we probably called for the car about five or ten minutes after eleven so as to have maybe ten or fifteen minutes to get over to the train.'' The witness again denied making the statements testified to by plaintiff and her sister. Upon cross-examination the following occurred: ''Mr. Rorrison, you say this colored man had some tickets or something in his hand? A. He did. Q. Did he give you one? A. He did not. He was going to give me the ticket. Q. He did not give you any ticket? A. He was going to pull around to the side and *I gave him the room number.* . . . Q. Now, there was more conversation with this colored man about parking the car and then he said to you, 'If you are not going to be very long I will pull up around the corner,' is that right? A. That is right. . . . Q. Did you tell him not to park around the corner? A. No, I told him he could park around the corner on the side of the hotel. . . . Q. So you did not tell him any particular garage? A. *No, I didn't tell him the exact garage.* . . . Q. You did not give any specific direction to him where to park it, did you? . . . A. He was to park the car around the corner or put it in the garage. . . . He can park there on the side but he can't park more than an hour. . . . Q. And it was more than an hour after that you called for your car? A. Yes, sir''; that on prior occasions he probably tipped the doorman; that he told him that he would want the car in about an hour ''but I didn't instruct him to bring it back in an hour.''

That there is evidence that defendant turned his car over to Johnson, and instructed him to "take the car and park it some place but don't bury it," is clear. From defendant's testimony the jury would be justified in finding that he instructed Johnson to park the car provided he could avoid getting a ticket from the police for parking over an hour in one place, and that defendant did not follow his usual custom, that night, of having a "hiker" from the garage come to the hotel and take the car to the garage. A second question to determine is, Was the jury justified in finding from the evidence most favorable to plaintiff, with all its reasonable inferences, that defendant instructed Johnson to bring the car back to the hotel? Defendant, when called as a witness in his own behalf, testified, *"I told him at the time I wanted this car in about an hour,"* told him not to bury the car, as he wanted it back to take some folks to the train, *gave him instructions where to park the car;* "When you told him you would want it in that way what did he say to you? A. He said, 'Well, if you are only going to be gone an hour or so I will pull it around to the side of the hotel and leave it there' "; that before that evening, when he arrived at the hotel with his car, he had received tickets from the doorman, but that on that night, although Johnson had some tickets in his hand he did not give defendant one; that "he was going to pull around to the side and *I gave him the room number. . . .* I told him he could park around the corner on the side of the hotel," but that he (defendant) "didn't want him to get a ticket. . . . Q. I am asking you, were you concerned with where he parked the car? Did that make any difference to you, where he parked the car? A. Sure, it made a difference. I didn't expect him to park the car out in Grant Park. . . . He was to park the car around the corner or put it in the garage. . . . He can park there on the side but he can't park more than an hour. . . . Q. And you knew he could not park there for

more than an hour? A. Yes, sir. Q. And it was more than an hour after that that you called for your car? A. Yes, sir." Defendant further testified that he told the doorman that he would call for the car when he wanted it; that the train left at 11:30, "and we probably called for the car about five or ten minutes after eleven *so as to have maybe ten or fifteen minutes to get over to the train.*" Plaintiff and her sister testified that defendant stated that he had a right to believe that Johnson was capable of handling a car and that he told Johnson, "Take the car and park it some place but don't bury it. I want it back in time to take these folks to the train," which was to leave *around 10:30.* The principal point urged by defendant in support of his contention that he did not intend that the doorman should bring the car back to the hotel is based upon his testimony given by him when called as a witness in his own behalf, that he told Johnson that he would call for the car when he wanted it, and his further testimony that he called for the car about five or ten minutes after eleven. When testifying as a witness for plaintiff defendant stated that he could not remember the time the train left, nor whether he told Johnson that he wanted the car back in an hour or an hour and a half. He did not then testify that he told Johnson that he would call for the car when he wanted it. Nor did he state to plaintiff and her sister that he so told Johnson. The jury might well have found, under all the facts and circumstances in evidence, that defendant's testimony that he told the doorman he would call for the car when he wanted it was an afterthought. In any event, the argument that there are no facts or circumstances to rebut or question this alleged statement of defendant to Johnson is without merit. Because he had to take some friends to the train at a certain time, defendant was fearful that his car might become "buried" in a garage, or elsewhere, and therefore he did not follow his usual custom when he left

the car with the doorman. The fact that Johnson understood that he was to bring the car back and that he acted upon that understanding, throws light upon the directions given him by defendant. Plaintiff and her sister testified that defendant told them that the train left *around* 10:30 p. m., and he testified that he would need ten or fifteen minutes to get to the train from the hotel. He concedes that he made no call for the car until fifty or fifty-five minutes after the accident occurred. But for the accident, Johnson would have had the car in front of the hotel in due time for defendant to take his friends to a train that left *around* 10:30. Defendant argues that he expected a hiker from the garage to bring the car back to the hotel. But if Johnson, in complying with defendant's orders not to allow the car to be buried, was compelled to park the car or to place it in a garage a few blocks south of the hotel, it would not be the duty of the "hiker" from the Wabash & Harrison garage to find the car and bring it back to the hotel. Who but Johnson would know where the car was parked or garaged? We have reached the conclusion that the jury were justified in finding from the evidence most favorable to plaintiff, with all its reasonable inferences, that defendant instructed Johnson to bring the car back to the hotel and to then call up defendant's room.

Defendant contends that the undisputed evidence shows that "the driver of the car which injured plaintiff was not the agent or servant of the defendant," and argues that there is no evidence that Johnson's general employer, Auditorium Hotel Association, surrendered control of its employee to defendant, and that "without proof of such surrender by his general employer and the assumption of control by the defendant, Johnson remained the general servant of the hotel, only, and did not become the servant of the defendant"; that there is no evidence to show that the hotel

temporarily loaned or hired to defendant its servant for a special service, and that therefore Johnson no more became the servant of defendant "than a bell boy who might carry a traveler's luggage into the hotel would become the traveler's servant." Defendant cites *Densby v. Bartlett*, 318 Ill. 616, which involved the question as to whether or not, under the facts of that case, a servant of a general master was temporarily loaned or hired to another for some special purpose so that for the time being he became the servant of the person to whom it was claimed he was loaned or hired. Plaintiff's case is not based upon the theory of fact that the hotel temporarily loaned or hired Johnson to defendant. The night manager of the Palmer House, who at the time of the accident was with the Auditorium hotel, called as a witness by defendant, testified that the hotel had a rule that no doorman was to take a car to the garage; that he was supposed to call the garage for an attendant to drive the car and an attendant to bring it back; that the doormen were instructed not to leave the premises "until their time came to leave"; that Johnson, by parking the car on the night in question, "was plainly violating the orders of the Auditorium Hotel"; that doormen were permitted to park a car "near the hotel but not around Seventh Street"; that they were not supposed to park them at all, as it was against the rule of the hotel. Defendant now argues that this evidence should have no weight because defendant had no notice of the rule of the hotel or the instructions given by it to doormen. As he introduced the evidence he is not in a position to argue that it should now be disregarded.

It is undoubtedly the law that one may so use the servant of another as to make him his servant in the performance of some particular act, and it has been frequently stated that no arbitrary rule can be laid down by which it can be plainly seen in every case

whether a servant, in the performance of a particular act, is the servant of the general or the special master, and that the facts of each case must be looked into in order to reach a proper conclusion. After careful consideration of the pertinent facts and circumstances we have reached the conclusion that the jury were justified in finding from the evidence most favorable to plaintiff, with all its reasonable inferences, that Johnson, at the time and place in question, was the servant or agent of defendant. It is true that a bell boy in carrying a traveler's luggage into a hotel would not become the traveler's servant; but if the traveler, without the knowledge or consent of the hotel, told the bell boy to take the traveler's automobile and park it somewhere where it would not be buried, as he wanted to take some friends to the train, and to bring it back to the hotel in time to catch the train, and the bell boy, expecting a reward from the traveler, in complying with the request, on the way back to the hotel negligently collided with another automobile, could it be reasonably argued that the bell boy at the time of the accident was not the servant and agent of the traveler?

Defendant contends that if Johnson be considered the servant of defendant, still, he was not acting within the scope of his employment at the time and place of the accident. The accident happened within five blocks of the hotel, while Johnson was driving the car in the general direction of it. It is conceded that for Johnson to drive the car in front of the hotel it would be necessary for him to approach it from the north, as it is located on the west side of Michigan avenue. It is in one of the busy parts of Chicago. It is a reasonable inference from the evidence that Johnson was unable to place the car in the "ramp garage" on Wabash near Harrison without having it buried and that because of the number of cars parked near the hotel he was compelled to take the car a few blocks south before he could

park it or place it in another garage where it would not be buried. Defendant argues that Johnson, instead of going east to the inner Outer Drive to reach the hotel, should ''have gone to Wabash Avenue, one block west, and made two right turns so as to drive south on Michigan Avenue.'' It might well be said that Johnson selected a better highway to reach the hotel, than Wabash avenue, which has street car tracks and is a very busy thoroughfare, but even if he did not select the best approach to the hotel that fact would not be a material circumstance in determining the instant contention. The argument that Johnson, at the time and place of the accident, was not acting within the scope of his employment, is based upon a rather strained contention that Johnson had deviated or departed ''from the scope of any possible employment of Johnson by the defendant.'' We find no merit in this contention. *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387, cited in support of the contention, presents an entirely different state of facts. In *Kovell v. North Roseland Motor Sales,* 275 Ill. App. 566 (certiorari denied by the Supreme Court, ib. p. xiii), we had occasion to cite, at some length, the law bearing upon the question as to what constitutes deviation from the master's business, and it is unnecessary for us to here repeat what we there stated. Under the facts of the instant case the trial court would certainly not have been justified in holding as a matter of law that Johnson, at the time of the accident, had so deviated from his master's business as to amount to a departure from the service and for purposes personal to Johnson.

We find no merit in the contention that the action of the trial court in entering judgment for defendant may be justified on the ground that the Auditorium Hotel Association, through its doorman, Johnson, became bailee of defendant's car, and that defendant is not liable for the negligence of the hotel occurring during

the bailment. The authorities cited in support of the contention have no application to the facts of the instant case.

Finding, as we do, that the trial court erred in entering judgment for defendant notwithstanding the verdict of the jury, the judgment of the circuit court of Cook county is reversed, and in accordance with section 68 (3) c of the Practice Act judgment will be entered here in favor of plaintiff, Mary Elizabeth Fleming McCarthy, and against defendant, James Rorrison, for $5,000, the amount found by the jury in its verdict.

*Judgment of the circuit court reversed and judgment entered here in favor of plaintiff, Mary Elizabeth Fleming McCarthy, and against defendant, James Rorrison, for $5,000.*

SULLIVAN and FRIEND, JJ., concur.