## JORDAN v
## DAVID FRIEDMAN CARTAGE CO et

Ohio Appeals, 7th Dist, Mahoning Co

No 2466.  Decided April 15, 1938

A. L. Burgstaller, Youngstown, and James Arrow, Youngstown, for appellee.

Harrington, Huxley & Smith, Youngstown, for appellant.

Friedman & Rummell, Youngstown, for appellee, Rudi Nan.

## OPINION

By NICHOLS, J.

Alice Jordan, plaintiff, filed her action in the Court of Common Pleas of Mahoning County against David Friedman Cartage Company and Rudi Nan, defendants, wherein she claimed damages for personal injuries alleged to have been caused by the negligence of the defendants.

In her amended petition, plaintiff alleged that David Friedman Cartage Company is an Ohio corporation, engaged in the business of trucking and, among other trucking business, delivers beer at various places of business throughout the vicinity of Youngstown; that on May 23, 1936, at about 1:00 o'clock P. M., by and through its duly authorized agent and employee, was delivering beer at "Rudi's Lunch", at 18 South Champion Street, Youngstown; that South Champion Street is a duly dedicated and much traveled thoroughfare in the city and is in the closely built-up and congested district of the city, over which there is a considerable amount of pedestrian traffic; that Rudi Nan owns and operates a business at 18 South Champion Street, known as "Rudi's Lunch," in front of which place of business there is in the sidewalk a trap-door used for conveying merchandise and beer to the basement for the use of "Rudi's Lunch;" that at the above stated time plaintiff was walking in a southerly direction over and along the sidewalk on the west side of South Champion Street; that as she approached the trap-door in the sidewalk over which pedestrians constantly passed, she stepped forward and, without any warning, the metal trap-door was carelessly, negligently, suddenly and unexpectedly pushed up from underneath by the defendant, David Friedman Cartage Company, through its agent and employee who was then and there acting within the full scope of his employment, making an open hole without any railing or guard of any kind; and that she was thrown with terrific force and violence into such hole and against the grating, severely and painfully injuring her.

Plaintiff further averred that at the time defendant gave no warning of any kind to plaintiff of the impending danger and took no precautions whatsoever of seeing that the trap-door was properly guarded.

Plaintiff further alleged that the defendant, Rudi Nan, carelessly and negligently assisted the cartage company in opening the trap-door; that he carelessly and negligently allowed and permitted the trap door to be opened, without warning her of the impending danger; that he carelessly and negligently allowed the trap-door to be opened without placing a guard or railing around it.

Plaintiff further alleged that her injuries were caused solely and proximately by the negligence and carelessness of the defendants in opening the trap-door, and in negligently and carelessly failing to place any guard, rail, give notice, signal or warning of any kind to her.

After alleging the injuries claimed to have been received by her, plaintiff prayed judgment against the defendants in the sum of $5,000.00.

For its answer to plaintiff's amended petition, defendant, David Friedman Cartage Company admitted its corporate capacity; that it is engaged in the trucking business as alleged; that South Champion Street is a duly dedicated public thoroughfare as alleged; that the sidewalk is located thereon as alleged; that Rudi Nan operates a business on that street, commonly known as "Rudi's Lunch;" that in the sidewalk in front of his premises there is a trap-door, used for conveying merchandise into the basement; and that on or about the date alleged this defendant delivered an order of beer to that place.

Further answering, the cartage company denied each and every allegation in plaintiff's amended petition not specifically admitted to be true; and further specifically denied each and every allegation of negligence relating to it.

The defendant, Rudi Nan, filed a general denial to plaintiff's amended petition.

Upon the trial the jury returned a verdict in favor of plaintiff and against both defendants in the sum of $2,000.00, upon which verdict judgment was rendered. The cartage company files its appeal to this court on questions of law. The defendant, Rudi Nan, has not appealed from the judgment of the lower court.

The written assignment of error filed herein sets forth eleven grounds wherein it is claimed that the judgment of the trial court is erroneous and against the just rights of appellant. In oral argument and brief seven grounds of error are advanced, from which it is urged that this court should now enter final judgment for the cartage company or reverse the judgment of the lower court and remand the cause for retrial.

We find that the first, second, fifth, sixth and tenth assignments of error relate to the insufficiency of the evidence to warrant a judgment against appellant. These assignments of error are as follows:

(1) That there is no evidence to support the verdict;

(2) That the verdict is against the weight of the evidence;

(5) That the verdict should have been directed at the close of plaintiff's evidence;

(6) That the verdict should have been directed at the close of all the evidence; and

(10) That the trial court erred in overruling appellant's motion for judgment non obstante veredicto.

It may here be stated that counsel for appellee represent to this court in brief and oral argument that plaintiff's injuries are the result of the joint negligence of David Friedman Cartage Company and Rudi Nan; and that plaintiff's injuries were brought about by the combined negligence of both tort feasors in their omission to perform a common duty of care and caution; that both were concerned in the opening of the trap door, the one to receive and the other to deliver the barrels of beer.

We find it unnecessary to determine whether the gist of the action arose from the combined negligence of joint tort feasors. It has not been urged to this court that the defendants were improperly joined in the action; nor was any objection raised in the lower court by either defendant because of such joinder.

The record discloses that at the conclusion of the plaintiff's evidence, the Cartage Company moved the court to direct a verdict in its favor, for the reasons that there has been no negligence of the defendant shown, and that the plaintiff's evidence clearly shows without dispute that the defendant, Friedman Cartage Company, did not open the door on which plaintiff claims to have fallen and has not authorized, instructed or requested any one else to open the door; and for further reason that no agency whatever has been shown whereby anyone other than an employee of Friedman Cartage Company could be an agent for the purpose of opening the door; and for the further reason that Friedman Cartage Company whose duty it was to open the door, had no duty to place any guard rail around the trap-door before it undertook to open it in the absence of its knowledge that any one else did open the door, and that if there is any negligence in failing to put up any guard rail after the door was opened by David Friedman Cartage Company, such negligence could not be a proximate cause of the accident which occurred prior to the time defendant undertook to open the door.

This motion was overruled by the trial court and exception noted. A motion for directed verdict was also interposed on behalf of Rudi Nan, which was also overruled, whereupon it was stated by the court as follows:

"Now, gentlemen, who made the first opening statement of the two defendants?

"Mr. Clark (counsel for the Cartage Company): I believe I did.

"Court: Then you go forward.

"Mr. Clark: The defendant, the Friedman Cartage Company, has no further evidence at this time.

"Court: And rests?

"Mr. Clark: Yes. * * *

"Mr. Clark: At this time the defendant, David Friedman Cartage Company wishes to renew its motions as previously made. * * *

"Court: Overruled.

"Mr. Clark: Exceptions."

Thereafter, the defendant, Rudi Nan, proceeded to introduce evidence on his own behalf, and the defendant, David Friedman Cartage Company, by its counsel, exercised the privilege of cross examining the defendant, Rudi Nan, as well as cross examining two of the witnesses who had testified in chief on behalf of Rudi Nan.

It is the finding of this court that both of the previous motions made by the de-

fendant, David Friedman Cartage Company, prior to the cross examination by its counsel of the witnesses offered on behalf of the defendant, Rudi Nan, were waived by the Cartage Company.

We have no doubt of the right of the Cartage Company to have immediately retired from the trial of the action upon the overruling by the court of either its first or second motion for directed verdict and to have relied upon any error of the trial court in that respect, but when counsel for the Cartage Company remained at the trial table and exercised his prerogative of cross examination of the co-defendant, Rudi Nan, and other witnesses introduced on behalf of Rudi Nan, such action evidenced the intention of the Cartage Company that the jury, in arriving at its final verdict in the case, should consider all of the evidence, including that evinced upon such cross-examination, and that the Cartage Company did not rely upon the motions previously made for directed verdict.

However, at the close of all the evidence, the Cartage Company renewed its motion for directed verdict in its favor, and after the verdict was returned the Cartage Company filed its motion for judgment notwithstanding the verdict. Both of these motions were overruled by the trial court and exceptions noted.

To the proper determination of the right of defendant in connection with these motions we have addressed ourselves carefully to the consideration of the record to ascertain whether from all the evidence it appears that reasonable minds could arrive at different conclusions as to whether the Cartage Company was guilty of negligence as alleged in the amended petition, which was a proximate cause of plaintiff's injuries.

It is proper to make note of the contention of the Cartage Company to the effect that it is undisputed that it was its duty to deliver the beer into the basement of Rudi Nan's place of business, there being no duty devolving upon Rudi Nan to do anything which might be necessary to the placing of the beer in the basement; and it is contended that there is no evidence in the record from which reasonable minds could find that the Cartage Company, either by its agent or servant or any one else at its request, had opened the trap-door, and that the Cartage Company, therefore, had no duty to place a guard or warning at the sidewalk until such time as its agent or servant had opened the trap-door; and that the company could not reasonably anticipate that anyone other than its agent or servant would open the trap-door so as to make necessary the placing of a guard or warning on the sidewalk. It is not disputed in this case that plaintiff while lawfully proceeding upon the sidewalk in front of Rudi's Lunch, without any fault upon her part, was caused to fall over the trap-door as it was suddenly raised by someone after the Cartage Company had arrived with the beer in its truck and backed the same up to the sidewalk for the purpose of unloading the beer.

John Wellington was called by plaintiff as a witness and testified that he was employed by the Cartage Company, and on the day in question was hauling beer for that company; that his son was on the truck with him; that the son was not at that time in the employ of the Cartage Company but just rode around with his father; that after the truck had been backed up against the curb in front of the building the son was standing by the curb, back of and along side of the truck. No one testifies that the son had anything to do with the raising of the trap-door.

Mr. Wellington testified that when he arrived at the Rudi Nan Lunch he did not go into the grill and did not signal anybody inside the grill that he was there; that he had three kegs or half-barrels of beer on the truck, which he proceeded to unload from the rear end of the truck; that he unloaded the beer without any assistance and at the time the accident happened had taken but one of the half-barrels of beer off the truck; that he was the only employee of the Cartage Company there on that day; that he first saw plaintiff when he was taking the second half-barrel off the truck, at which time plaintiff was stepping onto the trap-door; that there was nobody near the door at that time and that he didn't have any knowledge at all that the trap-door was to be opened at that time; that he saw the plaintiff fall, and being asked what caused her to fall he answered, "somebody raised the door."

Mr. Wellington further testified that he had been delivering beer to Mr. Nan's place of business for about three years, off and on, "it might be once a week, it might have been twice a week;" that it was his job to open the trap-door, but that he did not open it every time; that it was his practice to have someone on the outside while he went downstairs to unlock the door, "I would ask the porter or bartender to watch while I opened the door;" that on this particular day he did not ask anyone

to watch the door on the outside because he didn't have the beer out of the truck yet.

The witness further testified that the trap-door could not be opened from the sidewalk; and that it was. necessary to go down nto the basement and either unlock the door or remove the bolt which held the two wings of the door. After having stated that he never asked anyone, upon any of the occasions when he delivered beer, to open the trap-door for him, the witness further testified:

"Q. Did I understand you correctly, it was your practice to open the door, it was your duty? A. Yes. To put the beer where they want it.

Q. Nobody ever opened it for you? A. Plenty of times.

Q. Who opened it for you? A. Rudi Nan.

Q. And who else? Did the bartender ever open it for you? A. No sir.

Q. But you always asked them to open it for you? A. No sir, I never asked them.

Q. You never asked them? How did they happen to open it for you? A. Who?

Q. Rudi Nan. A. How do I know? I never asked him to open it."

Rudi Nan was called by plaintiff for cross examination. From his testimony we quote in part:

"Q. How did you know that the Dave Friedman Cartage Company was out there with the beer? A. Every time they come with the beer they usually——

"Mr. Clark: I object to what is usually done.

"Q. How did you know that day? A. That day I seen the driver in the doorway.

Q. Did he say anything to you? A. They usually——

"Mr. Clark: I object.

"Court: Did he say anything to you that day? A. On that day, I don't know if he said anything on that day, but usually I know what it means when I see the driver there.

Q. Did he come into your place of business? A. He did.

Q. Then what did you do? A. I went down in the basement and the way the door opens in the sidewalk there is two ears on the door; each door has an ear, and a bolt was put through the ear to hold it fastened, and a nut on the end of the bolt screwed on. I took the nut off and took the bolt off the ear and laid it on the steps, and I went right up.

Q. Did you open the trap-door that day? A. No, I did not, * * *

Q. Is it possible for that trap-door to open up without someone forcing it open? A. No.

Q. When it is in place, it cannot be opened up unless someone pushes it open? A. You have to open it from the top or bottom.

Q. So that in order to open it, someone would either have to reach down from the top or someone would have to be underneath to push it up? A. Yes sir. * * *

Q. Well, did anyone ask you to unlock the door? A. Well, pretty near every time that—they usually came down to the driveway and either came in the business place or in the door, and they hollered 'we are here with the beer,' and that the bolt should be unfastened. * * *

Q. How did you know you should unhook the bolt? A. When the men arrived with the truck, he parked it in front and he came to the door.

Q. What did he say to you?

Mr. Clark: I object. He said he didn't say anything.

Court: He may answer.

Mr. Clark: Exception.

A. He said 'we are here with the beer, I am here with the beer.'

Q. When he said that, that is when you went into the basement and unhooked the bolt? A. Took the bolt out.

Q. There was no other purpose on that day for unhooking that bolt? A. No."

After plaintiff had rested her case, the defendant, Rudi Nan, went on the witness stand on his own behalf and further testified:

"A. The driver came to the place and parked his truck in front of my business and he came in the door. * * * He wanted— it all depends on how it was; if the place was busy, he will stay in the door or will come in, he usually comes in, he will come in the door, or will motion to me or holler, or do something. * * * It was sometimes —he wanted me to do something for him. * * * Regularly one man come down, usually either to me, or the bartender if he wasn't there, to go down and take .the bolt and nut off, or else he went down and one of us had to stay above.

Q. On the 23rd day of May, 1936, did the driver ask you to unbolt the door? A. Well, it was a regular thing, when one man came down to ask us for help."

At the close of Mr. Nan's testimony in chief in his own behalf, counsel for the Cartage Company proceeded to cross examine him and among the other questions propounded were the following:

"Q. You know Mr. Wellington, the gentleman who testified a few moments ago? A. Yes.

Q. Did he ever ask you to go down and unbolt the door? A. Yes, he did.

Q. Many times? A. Yes, sir."

This cross examination by counsel for the Cartage Company was somewhat extensive, and it is admitted in oral argument that it was the purpose of counsel to elicit from the witness any facts which might be helpful to the Cartage Company in its defense of plaintiff's action.

On further cross examination by counsel for the Cartage Company the following interrogatories were propounded and answers given:

"Q. Now, Mr. Nan, if I understand your testimony, on this particular day, on the 26th day of May, 1936, Mr. Wellington didn't come in and ask you to open the door? A. He came in the door and usually when they come they usually come in and notify us they are there.

Q. On this particular day, as I understand, Mr. Wellington did not come in and ask you to open the door, is that right? A. Well, I testified, too, it was the general rule I always, when he came in, one man we had assist them.

Q. I am asking you, you testified to this yesterday and testified to it today, is of the particular day he didn't ask you to open the door, did he, the day of the accident he didn't ask you to open the door? A. A good many times he would come in and give me a motion. * * *

Q. At no time in connection with any of your arrangements with the Friedman Cartage Company, you might call them arrangements under your testimony; were you to open the door; you were not to open the door at any time, were you? A. It all depended on the driver, what he wanted; did he want me to stay on the sidewalk or go down. * * * Sometimes I would go down and if I was busy, he will go down until they finished.

Q. One day one driver would want you to stand outside? A. Yes sir.

Q. And another day the same driver would want you to go down and unlock the door? A. Yes sir.

Q. But it was the duty of the driver to open the door? A. That is their business to deliver the beer and put it in place.

Q. So that they didn't ask you to do anything that was their business? A. They did.

Q. What? * * * A. I will go out and watch while he go down and take the bolt off."

James O'Connor, a witness for the defendant, Nan, testified in part as follows:

"Q. Did you see the driver come to the door on this particular day? A. Yes, I think I did.

Q. Did he ask that the door be opened or unbolted? A. Yes sir.

Q. And it is then that Mr. Nan went to the basement? A. Yes sir."

### (RE CROSS EXAMINATION

By Mr. Clark).

"Q. Where were you at the time the driver came in? A. I was back of the bar. * * *

Q. Were you paying any attention to the driver. A. Just spoke to me, that was all. * * *

Q. Did he speak to anyone else? A. Not that I recall. * * *

Q. What did he say to you? A. He just said, 'Good morning, I got some beer for you.' * * *

Q. After he said that, what did he do? A. He said he needed somebody to go down and take the lock off the grating.

Q. He said that to you? A. Mr. Nan went down.

Q. Did Mr. Nan hear that? A. Mr. Nan went down and took the bolt off."

We have, perhaps, quoted at too great length, but from the quoted testimony and the entire record we think that reasonable minds might properly find that Mr. Wellington, an employee of the Cartage Company had frequently delivered beer to the place of business of Mr. Nan; that it was his practice to indicate to the proprietor or his bartender that he had arrived with beer to be delivered in the basement; that he would either specifically request or by sign or motion indicate to Mr. Nan or his bartender that he desired the trap-door to be unlocked and raised, or the driver would go into the basement, unlock and raise the trap-door, but before doing so would take the precaution to have Mr. Nan or his bartender stand guard upon the sidewalk to see that pedestrians would not be injured by the sudden raising of the trap-door, which was flush with the sidewalk.

One of the grounds of negligence raised in plaintiff's petition was that the Cartage Company had failed and neglected to place a watch or guard upon the sidewalk when that company reasonably knew that the trap-door was to be raised; and that this failure to guard the trap-door or warn pedestrians was a proximate cause of her injuries. From the record as we view it, we believe the evidence was such that the trial court was required to overrule the motions of the Cartage Company for directed verdict and that the verdict of the jury is not manifestly against the weight of the evidence as to the claimed negligence of the Cartage Company, and we find that no prejudicial error intervened in this respect.

True, the testimony of the various witnesses was in conflict, but it was the province of the jury to determine the issue as to the negligence of the Cartage Company.

The seventh assignment of error relates to the following portion of the general charge of the trial court to the jury:

"Now, it is the claim of the plaintiff as disclosed by the petition, that the defendant Cartage Company was negligent in raising the trap-door, or raising one side of the trap door. Whether or not the defendant Cartage Company, by and through its employee or employees, did or did not do that, is an issue of fact under **all the evidence in the case.**"

This claimed error is based on the proposition contended for by counsel for the Cartage Company that the jury, in deciding the issue of negligence upon its part, should not be permitted to consider any evidence introduced on behalf of the defendant Nan, or upon cross examination of Nan's witnesses, but were required to decide this issue only upon the evidence submitted prior to the time the Cartage Company rested its case after motion for directed verdict.

For the reasons hereinbefore stated, we do not agree with this contention of the Cartage Company and we find no error in the quoted portion of the charge of the trial court.

The tenth assignment of error relates to the overruling by the trial court of the motion made by the Cartage Company for judgment non obstante veredicto. For the reasons hereinbefore set forth we find no error in this respect.

The eleventh assignment of error relates to error in overruling the motion of the Cartage Company for a new trial. After carefully considering all of the errors urged in brief and oral argument on behalf of the Cartage Company, we find that no error intervened in the overruling of its motion for a new trial.

It may be observed here that if the jury should find from the evidence, as we think they may have reasonably found therefrom, that the defendant Nan did open the trap-door at the request of the driver of the Cartage Company's truck and that such opening without the precaution of warning pedestrians was the proximate cause of plaintiff's injuries, it is not material that Nan was neither an agent nor employee of the Cartage Company.

It is the view of this court that if the driver of the Cartage Company's truck had requested anyone to go into the basement and open the trap-door, and nevertheless failed to guard the same or warn pedestrians, and injury resulted therefrom, the Cartage Company would be liable if the jury found such opening and failure to guard to be the proximate cause of plaintiff's injuries, and it seems apparent that it could not be reasonably contended that the opening of the trap-door combined with the failure to guard and warn was not the proximate cause of the plaintiff's injuries.

We have considered all of the errors assigned and are unable to find that prejudicial error intervened or that substantial justice has not been done. It necessarily follows that the judgment of the trial court must be, and the same is, affirmed.

Judgment affirmed.

CARTER and BENNETT, JJ, concur.