SHIMICK, Plaintiff-Appellant, v. STEARNS, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21381. Decided January 9, 1949.

Martin A. McCormack, E. J. Beran, Cleveland, for plaintiff-appellant.

Bulkley, Butler & Pillen, Cleveland, for defendant-appellee.

**OPINION**

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment for the defendant entered by the Court of Common Pleas of Cuyahoga County.

. The plaintiff's action was for damages suffered because of personal injuries he claims to have sustained as a proximate result of alleged acts of negligence of the defendant in the operation of his automobile.

The plaintiff had driven his automobile to the cab court of the Union Terminal. Depot in Cleveland, Ohio, to meet a friend who was to arrive in Cleveland that night. He parked his automobile at the cab platform close to the entrance of the station. While the plaintiff was putting baggage into the baggage trunk of his car the defendant drove his Cadillac automobile into the cab court and stopped about ten feet behind the plaintiff's car. The defendant was seated in the front seat of his automobile close to the right hand door, his son-in-law Mr. White, was seated in the middle and the defendant's chauffeur was behind the driving wheel. Seated in the rear seat was Mr. Motch, Mrs. White and Miss Jean Briggs. The two ladies were going to Chicago.

The Cadillac automobile was equipped with hydramatic transmission. In explanation of its operation, the defendant testified as follows:

"A. The car was a hydramatic. Now, hydramatic is a wonderful transmission, it is a wonderful device, but it has

some objection. If the car is out or in gear, it has a tendency to creep if the speed of the motor is even temporarily accelerated; it is run by an oil clutch and the acceleration of the motor tends to connect the mechanism.

Q. Well, now, if the motor is accelerated, what is the result of that?

A. The car creeps.

Q. Creeps forward?

A. Creeps forward, or, if it is in reverse, it creeps backward, during the time and only during the time that the motor is accelerated—."

When the chauffeur brought the automobile to a stop he left the motor running. He got out on the left hand side of the car to attend to some baggage. After the chauffeur left, the defendant directed Mr. White to get out and help the girls. As Mr. White got out in response to the defendant's direction, he passed under the steering wheel on the left side of the car and in doing so, accidentally stepped on the accelerator, whereupon the automobile moved forward striking the plaintiff. Upon this subject White testified as follows:

"Q. When the accident happened was the chauffeur in the car?

A. No, he was out, I think, in the back doing something in the back, getting out the bags, I guess.

Q. Do you know what made the car move?

A. Why, yes. Father Stearns told me to get out and see if I could help the girls, and so—and he was sitting on my right next to the door, so I had to move over across the car to get out, and I accidentally hit the accelerator and it went forward a little.

Q. Were you sliding out under the driver's wheel when you were getting out?

A. Yes."

The plaintiff's fourth allegation of negligence in his petition was as follows:

"4. Defendant operated and caused his car to be operated in a forward direction and in the direction of the rear of the plaintiff's car, when plaintiff was at the rear thereof, and defendant was careless and negligent in that respect."

The court in its charge to the jury upon the issues, after explaining that there was no doubt but that the plaintiff was entitled to be compensated for his injuries, said:

"But the question is, the first question of fact, the first issue you have to determine is whether or not he is entitled to have this defendant, Frank B. Stearns, pay him for those injuries. And as was stated by Mr. Butler, in his argument, I think that summarizes the first issue. The question is: Who was responsible for causing that car to move forward? The plaintiff claims that Mr. Stearns was. Mr. Stearns denies that. That places upon the plaintiff the obligation of proving that Mr. Stearns, the defendant, was responsible for causing that car to move forward, and that burden the plaintiff must sustain by what we call in law a preponderance of the evidence."

After the case had been submitted to the jury, they at their own request were returned to the court room for further instructions. They presented the following written question:

"Is the owner of a car responsible for the actions of his employee or guest while operating his car?"

The court then gave further instructions as follows:

"The general rule is that one is responsible for the actions of any employee and is not responsible for the actions of a guest. That liability is one for which the guest must respond. And I think in this case, I should say that this case has been tried upon the question as to who put the car in motion. If it was the guest, the guest would be responsible, or would be liable to respond in damages, but the owner of the car would not be liable to respond for his guest. It has been the theory of this case, and it is so tried that the employee was out of the car at the time that the car was put in motion."

The plaintiff requested the court to give further instructions at this time, as follows:

"Then I request this court to charge that if they find that the owner of this machine ordered his guest to go out and help the girls with their baggage, and in addition to that refused to get out of his side to permit the guest, and

ordered him to go past the wheel while that car was—while the motor of that car was running, that that first order constituted that guest his agent and servant, and the second order constituted that guest his agent and servant with specific instructions in that in following the specific instructions of that owner that guest was negligent, then the negligence of that agent and the guest who became the agent of the owner, following out his order, made the owner responsible under the theory of respondeat superior."

This request was refused, to which exception was taken.

The jury returned a verdict for the defendant upon which judgment was entered.

The plaintiff's assignments of error are as follows:

"1. The trial court erred in overruling plaintiff's motion for a new trial on the ground that the verdict was against the manifest weight of the evidence.

2. The trial court erred in overruling plaintiff's motion for a new trial on the ground that the court's charge as to "negligence and proximate cause" was inaccurate, ambiguous and misleading, all to the prejudice of the plaintiff.

3. The trial court erred in overruling plaintiff's motion for a new trial on the ground that it refused to permit certain cross-examination of the defendant.

4. The trial court erred in overruling the plaintiff's motion for a new trial on the ground that it refused to give the specific charge submitted by plaintiff after the jury had returned for further instruction."

We will first consider the second and fourth assignments of error. The charge of the court on the question of defendant's negligence was very limited in scope and not sufficiently explanatory to be of any assistance to the jury. The court told the jury that the sole question for them to decide was "who was responsible for causing the car to move forward?" The failure of the court to define the issues clearly and to state the rules of law applicable thereto must have been the reason that they requested further instructions. The additional instructions given as above set forth, were prejudicially erroneous to the plaintiff's case. The effect of this instruction was that under no circumstances could the defendant be held liable for the acts of a guest, even though the guest

was acting at the express direction and request of the defendant and acted under his control and authority.

The evidence of the defendant shows (1) that when defendant's chauffeur brought the automobile to a stop in the cab court at the Terminal, he left the motor in operation; that because the automobile was equipped with hydramatic transmission, the accelerating of the motor by stepping on the throttle, without more, would start the automobile in motion; that the defendant who was seated on the right side of the front seat, directed his son-in-law who was seated to the defendant's left, to "get out and help the girls" knowing White to be crippled and that it would be difficult and dangerous for him to pass under the driving wheel under these circumstances. Under these undisputed facts, to say that the defendant could not be held liable under any circumstances for the admitted negligent acts of White stepping on the throttle, when he knew that the motor was running and that plaintiff was standing in a position of danger, if the defendant's automobile was moved forward, constituted error prejudicial to the rights of the plaintiff.

In Restatement of the Law of Agency, pages 496-497 paragraph 225 the rule is stated as follows:

"One volunteering services without an agreement for or expectation of reward, may be a servant of the one accepting such services."

"Consideration is not necessary to create the relationship of principal and agent, and it is not necessary in the case of master and servant. One who has not contractual capacity may be a servant (see section 21) or a master (see section 20). One may be a servant without having promised to give or to continue the service."

The impelling factor in determining the relationship under circumstances such as are here presented, is whether or not the defendant manifested his consent to receive the services of White as his master. (Paragraph 221, page 490, Restatement of the Law of Agency.)

In the case of **Bretzfelder v. Demaree, 102 Oh St 105,** the Supreme Court of Ohio stated the rule as follows: (Parags. 2-3 of syllabus)—

"2. In an action against the husband for his wife's negligence, the marital relationship, of itself, is not a sufficient

ground for recovery against him. It must be proven that the negligent acts of the wife were committed in the furtherance of her husband's business or **in the execution** of his orders. A relation of principal and agent or of master and servant between them must be shown as a basis for recovery against him.

"3. When, by permission of her husband, the wife is allowed the use the latter's automobile for her own purpose, proof that the car was his, that she was his wife, and that she took her child with her to religious services, does not, ipso facto, make the husband liable as her principal."

In **Jordan v. Friedman Cartage Co. 27 Abs 433,** the court sustained a judgment for the plaintiff for injuries received by falling through an unguarded trap door in the sidewalk where defendant's driver who was going to deliver beer to the basement of a restaurant fronting on the street where the trap door was located, directed an employee of the restaurant to open the trap door which he did, without guarding against the danger thus created. Paragraph 3 of the headnote provides:

"3. Where a driver of a cartage company requests any one in a place to which he is delivering beer in barrels, to go into the basement and open the trap door in the sidewalk, and nevertheless fails to guard the same or warn pedestrians, and injury results therefrom, the Cartage Company is liable if such opening and failure to guard are the proximate cause of the pedestrian's injury, regardless of the fact that the person who opened the door was neither an agent nor an employee of the company."

In Hollidge v. Duncan, 85 N. E. 186 (Supreme Court of Mass. 1908) plaintiff was looking in a store window when the pole or tongue of defendant's cart, through the negligence of a bystander, caused to either strike him or break the window from the effects of which plaintiff was injured. The defendant's servant had requested the bystander to help make some repairs as the cart was out of order and the horses had been unhitched therefrom. Paragraphs 2 and 3 of the headnotes provide:

"2. A pedestrian having been injured by the pole of a dump

cart swinging around and striking him, or striking glass which fell on him, caused by a bystander pulling a blanket caught between the seat and the sweep of the cart while assisting defendant's driver in repairing the cart, which was out of order, the court, in an action against defendant for such injury, in the absence of an explanation as to how long the cart had been out of order, or what caused it to be so, could find that the cart was out of order through defendant's negligence and that its condition contributed to the accident, or, in other words, that if it had not been for the cart's condition, the bystander's act would not have caused the accident.

3. It is not essential to defendant's liability for injury to a pedestrian, caused by the pole of a dump cart swinging around and striking the pedestrian, or striking glass, which fell on him, caused by a bystander, who had been asked by defendant's driver to assist him in repairing the cart, pulling a blanket caught between the seat and the sweep of the cart, that defendant should have been able to foresee the precise manner in which the accident happened; it being sufficient that injury to another was reasonably to be apprehended, as a result of his negligence in permitting the cart to be out of order."

In Winkelstein v. Solitare, 27 Atl. Rep. (2d) 862, (Sup. Ct. of N. Y. 1942) the defendant directed his sister-in-law to close the door of his automobile and in doing so she negligently shut it on the finger of the plaintiff. Paragraphs 2 and 3 of the headnote provide:

"2. Where defendant's sister-in-law at defendant's direction, closed the door of defendant's automobile on an invitee's finger, as invitee was entering automobile, the wrongful act in execution of defendant's command was his own and the sister-in-law was the 'agent' of defendant so as to render defendant liable for her wrongful acts under the principle of 'respondeat superior.'

3. The relation of 'master and servant' in its full sense arises only out of contract but to constitute that relation as to third persons, it is not requisite that any actual contract should subsist between the parties or that compensation should be expected by the servant, the test being whether the act is done by one for another with the knowledge and assent of the person to be charged as master."

See also Alhorf v. Wolfe, 22 N. Y. 355; Guss v. Twin City Taxicab Co. 139 N. W. 611; Rubin v. Schapp, 127 Fed. (2d) 625; McCarthy v. Harrison, 283 Ill. App. 129.

It is clear from the foregoing authorities that at least the question of whether or not White was acting in such a way as to make the defendant liable for his negligent act, the defendant having "accepted such services" is a jury question.

An examination of the plaintiff's request to charge made at the time the jury had returned for further instructions, while not wholly correct, brought to the attention of the court the errors in the instruction given, and it was therefore the duty of the court to give a corrected instruction on the responsibility of a defendant for the acts of his guest, performed at his request, where under the circumstances it can be said that there is evidence tending to establish that by his direction he consented to receive such services as a master.

One other circumstance must be given consideration in considering the court's charge given in answer to the question presented by the jury and the refusal of the court to give the correct substance of plaintiff's requested charge. The defendant's chauffeur, when he brought the automobile to a stop in the taxicab court at the Terminal, and left his place behind the wheel to see to the baggage, left the motor running. His act in so doing was the act of the defendant Stearns. Whether or not such conduct, under the circumstances, was the conduct of a reasonably prudent person, was a jury question, together with the further question as to whether or not such act of negligence, if it constituted a failure to exercise ordinary care, was a direct and proximate cause of the injuries sustained by the plaintiff.

In considering this question two undisputed facts must be kept in mind, first—the automobile was equipped with hydramatic drive which would cause it to move forward by the slightest acceleration of the motor, and second—the defendant directed White to leave the automobile and "help the girls" when, by his own conduct, the left front door was the only door through which White could carry out the defendant's instructions. Under these circumstances the question of whether a foreseeable danger to the plaintiff was created in the exercise of ordinary care, certainly was a jury question. This issue is raised under the allegations of plaintiff's petition including specifications of negligence No. 4 and the evidence. By the court's charge the jury was pre-

cluded from giving this theory of the case any consideration whatever.

In Restatement of the Law of Torts, under the heading of "Negligence of Intervening Acts" Vol. 2, paragraph 477 at page 1197, the author says:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

In **Mouse v. Savings & Trust Co. 120 Oh St 599,** in considering the question of proximate cause in causing an injury through the negligent act of the defendant where an intervening act proximately assists in bringing about the injury, sets forth the rule in the first paragraph of the syllabus as follows:

"1. The mere fact that the intervention of a responsible human being can be traced between the defendant's alleged wrongful act and the injury complained of, does not absolve him upon the ground of lack of proximate cause, if the injury ensued in the ordinary course of events, and if the intervening cause was set in motion by the defendant."

See also:

Wiles v. New York Central Railroad Co. 19 N. W. (2d) 90, Michigan Supreme Court, 1945.

**Pugh v. Akron, Chicago Transportation Co. Inc. 64 Oh Ap 479,** affirmed, **137 Oh St 164.**

The second and fourth claims of error are therefore well taken. We find no error as set forth in the first and third assignments of error.

For the foregoing reasons the judgment of the Court of Common Pleas is reversed, and the cause is remanded for

further proceedings according to law. Exceptions noted. Order see journal.

McNAMEE, J, HURD, J, concur.